## Chicago Pneumatic Tool Co. v. H. W. Johns Mfg. Co.

1. CORPORATIONS—*Presumptions as to the Power of the President.*— When the president of a corporation performs an act pertaining to the business of his company the presumption will be indulged that such act is legally done, and is binding upon the corporation.

2. ULTRA VIRES—*Burden of Proof on the Party Pleading Such Defense.*—It devolves upon the party pleading the defense of *ultra vires* to establish it by competent proof.

**Assumpsit,** on a promissory note. Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed March 20, 1902.

STEERE & FURBER, attorneys for appellant.

ALDEN, LATHAM & YOUNG, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment against appellant for the sum of $961.31. Appellant's president, J. W. Duntley, gave to appellee the following order:

" J. W. DUNTLEY, President.
S. F. MILLER, Vice-President.
W. B. HENDERSHEETS, Sec. & Treas.
CHICAGO PNEUMATIC TOOL COMPANY,
1533 Monadnock Block.
CHICAGO, Jan. 18th, 1896.

H. W. JOHNS MFG. Co., Chicago, Ill.

GENTLEMEN :—Please enter our order for 25,000 large Monarch washers, price to be $45.50 for the first one hundred, balance of order to be $2.50 per hundred. Also enter our order for 25,000 of smaller washers which we call our number two, price to be $45.45 for the first one hundred washers, balance of order to be $2.45 per hundred.

We deliver you blue prints giving exact dimensions and washers are to be made accordingly. Shipments are to be made as soon as dies are completed, at the rate of 200 to 300 per day and made in weekly shipments. We wish to have two of each size forwarded us as soon as dies are completed, for our approval.

350    Appellate Courts of Illinois.

Vol. 101.] Chicago Pneumatic Tool Co. v. H. W. Johns Mfg. Co.

Terms of payment, cash every thirty days on all goods delivered f. o. b., Chicago.

Yours respectfully,
J. W. Duntley, Pres't."

The fact that appellee manufactured washers under the order is not disputed; neither is the amount of appellee's bill, for which, with interest, judgment was rendered, disputed.

Appellant's contentions are that Mr. Duntley had no authority to give the order; that the contract was *ultra vires*, and that the instructions of the court for the parties are inconsistent.

Appellant was organized as a corporation April 3, 1895, and its articles of incorporation were recorded May 31, 1895. The object of its incorporation is thus expressed in its charter: "The object for which it is formed is to manufacture, sell and deal in pneumatic tools." The capital stock is stated to be $60,000, divided into shares of $100 each. John W. Duntley, the president of the company, subscribed for 59,800 shares and two other persons for one share each. Duntley testified that he was the president and manager of the company, had full charge of its business, and, as a rule, made most of its contracts. His signature to the order set out *supra*, was proved. In 1 Morawetz on Private Corporations, Sec. 538, the author says: "He being the legal head of the body, when an act is performed by him, the presumption will be indulged that the act is legally done and is binding upon the body." Citing numerous cases. In Smith v. Smith, 62 Ill. 493, the court say:

"In the absence of legislative enactment or provision made in the by-laws, corporations usually act through their president, or those representing him. He being the legal head of the body, when an act pertaining to the legal business of the company is performed by him, the presumption will be indulged that the act was legally done, and is binding upon the body." See, also, Mitchell v. Deeds, 49 Ill. 416, 424, and Union Mutual Life Ins. Co. v. White, 106 Ib. 67, 75, to the same effect.

The doctrine thus announced is particularly applicable in

the present case, Mr. Duntley being, as he testified, not only the president of the company, but its general manager, having full charge of its business, and the owner of its capital stock of $60,000, with the exception of two shares of the par value of $200. That he had authority to make contracts for the company, in carrying on the business for which it was incorporated, is, we think, sustained by the evidence; that the order for the washers was given on behalf of the appellant, we think is also sustained by the evidence. Reeves, who had charge of the electrical department of the appellee, testified that Mr. Duntley, before the order was given, and while he was negotiating for the washers, told him that the Chicago Pneumatic Tool Company required quotations on the washers, and that, at a subsequent time, and after the washers had been manufactured, the witness asked Mr. Duntley for a check, and Mr. Duntley told him he was not then able to give him one, but there would be a meeting of the board of directors the next week, and the account would be taken up, and that he had no doubt that a settlement would be made in full after the meeting of the board. At another time Mr. Duntley offered to give a ninety-day note of appellant in payment of the account, and when appellee refused to accept it he said appellee would have to wait for its money. Another witness testified that he saw Mr. Hendersheets, the secretary and treasurer of appellant, at appellant's office, and showed him a statement of the account of appellee, which was admitted in evidence, and was made out to appellant as debtor to appellee, and told Hendersheets that the account was overdue, and asked him when appellee might expect payment, and Hendersheets said, " The Chicago Pneumatic Tool Company are making arrangements to pay several accounts that they owe, and yours will be paid among the number very shortly." The president, Mr. Duntley, being the general manager of the company, and having full charge of its business, it did not, in view of the authorities cited *supra*, devolve on appellee to show that he was authorized to act for the company, in making contracts, by the board of

directors, or any by-law of the company. See, also, St. L., A. & C. R. R. Co. v. Dalby, 19 Ill. 353, 374-5.

Appellant's counsel contend that Mr. Duntley's admissions were incompetent as against appellant; but if the business was within the scope of the company's powers, his admissions made in the transaction of the business are competent evidence against appellant. C., B. & Q. R. R. Co. v. Coleman, 18 Ill. 297.

On the question whether the contract was *ultra vires*, the only evidence is appellant's charter and the testimony of Mr. Hendersheets, the secretary and treasurer of appellant. He testified that he knew only from hearsay what the washers in question were, that he had not examined them; that an insulated joint is a joint designed to insulate wire in a building, and connect gas fixtures in pipe, to insulate the electricity for the rest of the building, and that such a joint or washer could not, according to his knowledge, be of any use in connection with pneumatic tools. On cross-examination this witness testified that he had seen mica washers, but did not know what they were used for, or how they were used, with reference to electric joints; that they were made for the insulation of an electric joint, and were only a part of a certain article. The witness' evidence that so far as his knowledge extended, the washers in question would be of no use in connection with pneumatic tools, taken in connection with his statement that he did not know of his own knowledge what such washers are used for, falls short, in our opinion, of proving that the purchase of the washers was *ultra vires* the corporation, and is quite consistent with the view that they might have been used with other appliances, in lighting appellant's factory by means of electricity. It devolved on appellant to prove its defense of *ultra vires*, and we can not say that the finding of the jury against that defense was not warranted. We find no reversible error in the giving or refusal of instructions.

The judgment will be affirmed.