# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## THIRD GRAND DIVISION.

SEPTEMBER TERM, 1867.

---

\*JAMES MITCHELL et al.

v.

THOMAS DEEDS.

1. CONSTITUTIONAL LAW—*power of the legislature to validate an irregularly organized corporate body.* The legislature have the same power to ratify and confirm an irregularly organized corporate body, that they have to create a new one.

2. STATUTES—*concerning the act of Feb., 1857—confirming the acts of consolidation between certain railroads.* And by the act of February 14, 1857, confirming the consolidation before then entered into, between the Savannah Branch Railroad Company and the Racine & Mississippi Railroad Company, the corporate body

---

*This and the following case were unavoidably omitted from the report of the other cases decided at the same term at which these were originally submitted.

which was organized in accordance with the act of consolidation, became legal, notwithstanding such organization may have been irregular.

3. CORPORATIONS—*corporate existence admitted—by a party who executes his note to such body.* And where a party, prior to the passage of the act of 1857, executed and delivered to the "Racine & Mississippi Railroad Company," the corporation organized under such act of consolidation, his promissory note, and which was afterwards, and before its maturity, assigned by the company, through its president: *Held*, in an action upon such note by the assignee, against the maker, that the defendant, by executing his note to the company, thereby admitted its corporate existence, and in order to avoid its payment for the want of a party with whom to contract, he must prove that no such body existed in fact.

4. PLEADING AT LAW—*of the plea of nul tiel corporation.* The rule is well settled in this State, that under a plea of *nul tiel corporation*, where an organization in fact, and a user is shown, the existence of the corporate body is proved.

5. SAME—*want or failure of consideration when pleaded—must be proved.* This court has said, that under the tenth section of the statute regulating negotiable instruments, where a want or failure of consideration is pleaded, it must be proved by the party alleging it. *Stacker* v. *Watson*, 1 Scam. 207, and *Topper* v. *Snow*, 20 Ill. 434.

6. SAME—*must be shown by a preponderance of evidence.* And in this case, such defense having been set up by the defendant, it devolved upon him to prove, that the plaintiff who received the note before its maturity, had notice of such defense at the time he so received it. This issue, like all other affirmative issues, should be proved by a preponderance of evidence.

7. FRAUD—*what constitutes.* To constitute fraud, there must be a willful, false representation of facts, or the suppression of such facts as honesty and good faith require should be disclosed.

8. SAME—*false representations.* And in such case, when the defendant also set up as a defense that the note was procured from him by the company, by means of false and fraudulent representations made by its officers, to the effect that these companies had *legally* consolidated, and the proof showed that articles of consolidation between the parties had been drawn up and signed, and officers of this new organization had been elected, and had entered upon the discharge of their duties: *Held*, that this was sufficient to repel the presumption of false representation that the companies had *legally* consolidated, unless the persons making them, knew that the consolidation was illegal and unauthorized.

9. CORPORATIONS—*user of franchises—the presumption in a collateral proceeding.* A user of franchises raises the presumption in a collateral proceeding, that a corporation is in the rightful exercise of such power.

10. And in this case, an organization in fact, and a user of franchises usual to such bodies having been shown, it was error for the court to refuse an instruction

53—49TH ILL.

which fairly presented the question, whether the officers making the representations concerning the consolidation of the companies, knew at the time that no consolidation had been effected.

11.  Fraud—*fraudulent representations—must be proved like any other fraud.* And the defendant also having set up as a defense, that he was induced to execute said note, by means of false and fraudulent representations made to him by the officers of the company, concerning its solvency, and the progress of its road to completion, he must prove it, otherwise he must fail on this issue.  Where fraudulent representations are relied upon as a defense, they must be established like any other fraud.

12.  Corporations—*authority of the president to sell and assign the securities of a corporation.*  Nor can it be objected by the defendant, that the assignment of such note by the president, was without authority, the proof showing, that by a resolution of the board of directors, adopted prior to the assignment, the president was authorized to pay off any debts owing by the company, in any securities or other property of the corporation, and there being no evidence that it was assigned by him to plaintiff for any other purpose than that expressed in such resolution.

13.  Same—*may appoint any person to dispose of their property or transfer their negotiable securities.*  A corporation may, unless otherwise provided by its charter, by resolution or by-law, appoint any person an agent, for the purpose of transferring or disposing of its property or negotiable securities.

14.  No officer of the corporation possesses such exclusive power, unless conferred by charter.

15.  And in the absence of both statutory authority and regulations of the corporate body, if the proof showed that the president was in the habit of exercising such power, then his authority so to act might be inferred.

16.  The doctrine seems to be well settled, that the president of a corporate body may perform all acts which are incident to the execution of the trust reposed in him, such as custom or necessity has imposed upon the office, and this without express authority.

17.  And it is immaterial whether such authority exists by virtue of his office, or is imposed by the course of the business of the company.   *C., B. & Q. R. R.* v. *Coleman,* 18 Ill. 397.

Writ of error to the Circuit Court of Jo Daviess county ; the Hon. Benjamin R. Sheldon, Judge, presiding.

The opinion states the case.

Mr. THOMAS J. TURNER, for the appellants.

Mr. J. H. KNOWLTON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by James Mitchell, Roderic Richardson, Holden Putnam and John Page, in the circuit court of Jo Daviess, against Thomas Deeds. The action was for the recovery of two promissory notes executed by defendant to the Racine & Mississippi Railroad Company, and endorsed to plaintiffs before their maturity. There were several defenses interposed, and on the trial in the court below, the jury found for the defendant. To reverse that judgment, the cause is brought to this court on error.

We will first determine whether this company had such an existence as authorized them to take these notes and to assign them. It is insisted, that the articles of consolidation executed by the two companies, having no seal attached, was void, and failed to produce the corporate body intended to have been organized by these articles.

An act of the general assembly, approved on the 14th day of February, 1857, more than one year after the articles of consolidation were executed, declares that the consolidation is ratified and confirmed. It will not be denied that the general assembly has the same power to confirm and validate an irregularly organized corporate body, as it has to bring into existence a new one. It must, therefore, he held that this company became legal by this act, if not so previous to that time.

It is, however, said, that the notes in controversy having been executed on the 9th of May, 1856, about nine months before this act was passed, were not affected by its provisions. This is no doubt true, but appellee admitted the existence of the body by giving them. It has been repeatedly held, that

420        Mitchell *et al. v.* Deeds.        [Sept. T.,

Opinion of the Court.

under a plea of *nul tiel corporation,* when an organization in fact and a user is shown, the existence of the body is proved. In this case, the proof shows an organization in fact, by the election of officers, who acted for the body, and that they used and enjoyed the franchises of a railroad company organized by the laws of the State, and not only so, but appellee fully admitted the existence of such a body, by executing to it the notes in question.

The 10th section of our statute regulating negotiable instruments, gives the defense of a failure of consideration, in whole or in part, or the want of a consideration, but saves the rights of *bona fide* holders by assignment before they fall due. It has been held, under this section, that when the want or failure of consideration is pleaded, it must be proved by the party who interposes the defense. *Stacker* v. *Watson,* 1 Scam. 207; *Topper* v. *Snow,* 20 Ill. 434. As a general rule, subject, it may be, to a few exceptions, the party who holds the affirmative of an issue, is held to its proof. It, then, devolved upon appellee to prove the averment, that appellants had notice of the defense set up, as they were purchasers of the notes by assignment before they became due. Even had it appeared there was a want of consideration, or that it had failed in whole or in part, still it was indispensable that it should have been proved that appellants had notice of the fact when they received them, to have constituted a defense. This issue, like all other affirmative issues, should be proved by a preponderance of evidence.

The notes were endorsed by Durand, the president of the company; and to establish his authority to make the assignment, appellants read in evidence two resolutions of the board of directors of the company. The first was adopted on the 28th of January, 1858, and authorizes the president and vice-president of the company to enter into such arrangements with the creditors of the company and the holders of its securities, for such relief as the circumstances and the necessity of

the company might require, and to make such stipulations and agreements as they might deem proper and expedient. The other resolution was adopted on the 26th of October, 1859. It authorizes the president to pay off any debts owing by the company, in any securities or other property of the corporation, at such rate as he may deem advisable. This, so far as we can see, was the last action taken by the board in reference to conferring power to dispose of the securities of the company. By this latter resolution, Durand had ample power to sell these notes for the purpose of paying any portion of the indebtedness of the corporation, and there is no evidence in this record that they were sold for any other purpose. It was prior in date to the assignment; and the adoption of this resolution, by fair intendment, abrogated so much of the former one as was repugnant to its provisions, and invested the president with the sole power to act, and hence this last delegation of power must control.

A large number of instructions were asked by each party, on the trial below. A number of those asked by appellants were refused, and exceptions duly taken at the time. Of that number is the 11th, which is this:

" The jury are instructed that, though they should believe, from the evidence, that the instrument for consolidation between the Wisconsin Railroad Company, and the Rockton & Free-port Railroad Company had no seal attached; yet, that if they also believe, from the evidence, that said companies were authorized, under the laws of Wisconsin and Illinois, to consolidate; that it was the *bona fide* intention of the companies to consolidate conformably to such authority; that they believed they had so consolidated; that under said instrument of consolidation the said companies did in fact unite in constructing and operating a continuous line of road in said States; that no stockholders ever objected to such consolidation as to such united construction and operation; and that such consolidation

has never been judicially declared invalid, or attacked in any proceeding undertaken directly for that purpose, then it is for the jury to say whether there was fraud, either actual or constructive, in the representations of the railroad company, to the effect that it had the right to construct and operate a railroad in the State of Illinois."

The pleas had set up and relied upon fraudulent representations, as a defense to these notes, and in maintenance of the pleas, it was insisted, that the original companies were not legally consolidated, and that representations that they had become consolidated was a fraud upon appellee.

To constitute fraud, there must be a willful, false representation of facts, or the suppression of such facts as honesty and good faith require to be disclosed.    If, then, the officers attempted, in good faith, to consolidate these roads, and the persons who represented that they had accomplished that object, did so in good faith, an essential ingredient of fraud was wanting, and that defense was not made out under the plea.

Again, a user of franchises raises the presumption, in a collateral proceeding, that a corporation is in the rightful exercise of such power.    The averment in the declaration that the body is an incorporation, is sustained by proving that they are exercising corporate rights and privileges.    But when the government proceeds against such a body, by *scire facias* or *quo warranto,* to terminate the existence of a body because it is alleged they have usurped their franchises, then they are bound to show a sufficient grant to authorize their organization, and also, that they have conformed to all of the material requirements imposed by their charter, or if not, that their organization has been properly legalized.

The law is well settled in this State, that under the plea of *nul tiel corporation,* the plaintiff need only show an organization in fact, and a user of corporate franchises.    *Marsh* v.

*Astoria Lodge*, 27 Ill. 421; *President and Trustees of Mendota* v. *Thompson*, 20 Ill. 197; *Town of Lewiston* v. *Proctor*, 27 Ill. 414; *Hamilton* v. *Town of Carthage*, 24 Ill. 22. In this case, there had been an effort to consolidate the two roads. Articles had been drawn up and signed; officers had been elected and had entered upon the discharge of their duty, and were engaged in the construction of the road, which was certainly sufficient to repel the presumption of fraudulent representations, that the roads had consolidated, unless the officers knew that the consolidation was illegal and unauthorized.

Having given these notes to this company, appellee admitted the existence of the corporate body, and it devolved upon him to prove that no such body existed in fact, to avoid the payment of the notes for the want of a party with whom to contract.

There was evidence in this case tending to show user of franchises usual to such bodies, and the question, whether the existence of the corporation had been shown, was fairly before the jury, and the instruction fairly presented the question, whether the officers of the road had knowledge that no consolidation had been effected, and it should have been given.

The court below likewise refused to give appellants' 20th instruction. It is this:

"In order that the defendant may avail himself of the defense set up in the second and third pleas in this case, it must not only appear that the statements and representations set forth in said pleas were made, but it must also appear that such statements and representations were false; and that the parties making them knew them to be false at the time they were made."

The special pleas filed by appellee, contain the matter of several separate defences. Among the averments is one that false and fraudulent representations were made by the officers

424            MITCHELL *et al. v.* DEEDS.            [Sept. T.,

Opinion of the Court.

of the company, as to its solvency and progress to completion, and that they were relied upon by appellee as true when he gave these notes. He avers that the company had practiced fraud to induce him to execute the notes, and that he relied upon the false and fraudulent representations thus made, and having made the averments, he must prove them, and failing to do so, he must fail on this issue. Appellee has taken upon himself the burthen of proving the representations to be false, and that the officers making them knew the fact, and that appellants were informed thereof when they took the assignment of the notes. This instruction fairly presents the question, whether the statements were made, if so, whether they were false, and the officers acting for the company knew it. The instruction was proper, and should have been given. Fraudulent representations, relied upon as a defense, must be established, like other fraud.

In so far as the appellee's instructions contravene the 11th and 20th of appellants' instructions, they were erroneous, and should not have been given without proper modifications. In giving them the court erred.

As to the 2d instruction asked by appellants, it was calculated to mislead the jury, and was therefore properly refused. As we understand the law, a corporate body may, unless otherwise provided by their charter, appoint any member of the body, or other person, by their by-laws or by resolution, an agent to transfer or dispose of their property or negotiable securities. No officer of the body has that exclusive power, unless given by the charter. They may confer power on the president, treasurer, secretary, other officer or other person. But in the absence of both statutory authority and regulations of the body on the subject, the presumption might be indulged, that the president, as the head of the organization, would have authority, if incident to the organization, or in conformity to the usage and custom of business. The doctrine seems to be settled, that the president of a corporate

body being its head, and through him the usual affairs of the company are constantly performed, and such acts are incident to the execution of the trust reposed in him, such as custom or necessity has imposed upon the office, he may perform without express authority. And it is immaterial whether such authority exists by virtue of his office, or is imposed by the course of business of the company. *Chicago, Burlington & Quincy Railroad* v. *Coleman*, 18 Ill. 297. Had there been evidence that the president was in the habit of transferring such instruments, in the regular course of the business of the company, then his authority might be inferred, and the instruction would have been proper.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*