Shirley LEA, Romona Pinnix and Annie Tinnin, Appellants,

v.

CONE MILLS CORPORATION, Appellee.

Shirley LEA, Romona Pinnix and Annie Tinnin, Appellees,

v.

CONE MILLS CORPORATION, Appellant.

Nos. 14068, 14069.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 17, 1970.

Decided Jan. 29, 1971.

Boreman, Circuit Judge, concurred in part and dissented in part and filed an opinion.

---

Robert Belton, J. LeVonne Chambers, Charlotte, N. C., William L. Robinson, New York City, for appellants.

Thorton H. Brooks, C. Allen Foster, Greensboro, N. C., for appellees.

Philip B. Sklover, Equal Employment Opportunity Commission, Washington, D. C., amicus curiae.

Before BOREMAN, BRYAN and CRAVEN, Circuit Judges.

PER CURIAM:

The Equal Employment Opportunities provisions of the Civil Rights Act of 1964 declare, in apposite part, Title VII, section 703, 42 U.S.C. § 2000e–2:

"(a) It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin".

At the suit of Shirley Lea, Romona Pinnix and Annie Tinnin, for themselves and all other persons similarly situated, the United States District Court for the Middle District of North Carolina found the statute was breached during 1965–66 by Cone Mills Corporation, chartered in North Carolina and operating textile mills there. Its business, concededly, comes within the statute. The action is proper in all aspects. 42 U.S.C. § 2000e–5(e).

The delinquencies were imputed to the Eno plant. Complainants, all Negro women, asserted that Cone Mills was breaking the law by refusing to employ persons of their race and sex, although it hired white female and Negro male workers.

The District Court enjoined the company's persistence in such deportment and, empowered by 42 U.S.C. § 2000e–5(g), ordered compliance. However, it declined to grant plaintiffs' additional claims for backpay and counsel fees, which are allowable under the Act in the discretion of the Court.

■ For logical sequence, we discuss in inverse order the points of argument as they were urged on this review. First we notice the District Judge's determination of violations of the Act, questioned by Cone Mills on *cross*-appeal. In our appraisal, adequate grounds for this conclusion are outlined in the District Judge's written opinion, Lea v. Cone Mills Corporation, 301 F.Supp. 97 (1969). Enough evidence, suffice it to say, warrants this declaration of illegality.

■ Plaintiffs appeal the disallowance of backpay and counsel fees. An epitome of the evidence and the Court's findings with respect to these two items were crisply stated by the District Judge:

"Since it is clearly apparent that when plaintiffs applied for employment at defendant's Eno Plant on September 2, 1965, their primary motive was to test defendant's employment practices rather than to seek actual employment, and *since there has been no showing whatever that defendant has since employed any females, either Negro or white, possessing plaintiffs' education, background, skill and work experience,* and since no vacancy of any type existed on September 2, 1965, plaintiffs are not entitled to recover back pay from September 2, 1965, or counsel fees. The fact that no vacancy existed on September 2, 1965, does not, however, preclude plaintiffs from maintaining this action, since Negro females were *not considered for employment at that time.* The order will apply prospectively only, but will be sufficient to effectively eliminate all discriminatory practices with respect to future female applicants for employment." (Accent added.) 301 F.Supp. at 102.

This finding is unassailable as "clearly erroneous", F.R.Civ.P. 52(a), and justifies refusal of the compensation demand.

■ However, the claim for counsel fees is not so fragile. In our evaluation the record upholds this prayer. Plaintiffs prevailed on the merits. They not only obtained an injunction against unfair employment practices but also opened the way for employment of Negro women in the Cone Mills plant. True, specific employment was not sought, and even if the application was solely a predicate for this suit, these facts ought not defeat the claim for attorneys' fees. This pronouncement upon their rights, and the requirement of Cone Mills to observe them in the future, were ordered in implementation of the Equal Employment Opportunities Act. Plaintiffs should not be denied attorneys' fees merely because theirs was a "test case".

The circumstances of this litigation put it squarely under the discipline of Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed. 2d 1263 (1968). What the Court there said in respect to Title II of the Civil Rights Act is equally apt to Title VII:

"When a plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.

"It follows that one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust. Because no such circumstances are present here, the District Court on remand should include reasonable counsel fees as part of the costs to be assessed against the respondents. * * *" (Footnotes omitted.) 390 U.S. at 402–403, 88 S. Ct. at 966–967.

With this parallel before us, it is unquestionable that the District Court erred in its refusal to decree counsel fees. This was a misdirection of the trial judge's discretion. See section 706 of the Act, 42 U.S.C. § 2000e–5(k). The order of the District Court will be approved in all other parts. The case is remanded for ascertainment of the sum to be awarded the plaintiffs by way of costs and attorneys' fees.

Affirmed in part and vacated in part.

BOREMAN, Circuit Judge (concurring in part, dissenting in part):

While I concur in the majority's decision as to the Title VII violation and the disallowance of backpay, I cannot agree with the majority in holding the district court in error for refusing an award of counsel fees to plaintiffs.

The statute in question, § 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), provides in part:

"In any action or proceeding under this subchapter *the court, in its discretion, may* allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, * * *." (Emphasis added.)

The allowance of attorneys' fees is specifically left to the discretion of the trial court; there should be no interference by this court unless there is a clear showing of abuse of such discretion. I find no such abuse under the circumstances here.

My brothers feel compelled to award counsel fees to plaintiffs by virtue of the decision in Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), wherein the Supreme Court held that one who succeeds in obtaining an injunction under Title II of the Civil Rights Act of 1964 should ordinarily recover attorneys' fees "unless special circumstances would render such an award unjust." I do not agree for two principal reasons: first, there were special circumstances which, in my opinion, even under *Newman*, would support the trial court's disallowance of attorneys' fees; second, *Newman* dealt with an award of attorneys' fees in a Title II action rather than a Title VII action here involved, and there are distinctions between the two Titles.

## I

"Special circumstances" were found by the district court upon supporting evidence which would justify the disallowance of counsel fees to plaintiffs. Those circumstances may be stated briefly as follows: plaintiffs had attended a meeting with a number of other Negro females, the meeting having been called by undisclosed persons; when they applied for employment they were acting under instructions to make applications at *various plants* in the area and to return to the meeting place to sign complaints against any company which did not offer them employment; it is apparent that plaintiffs did not select the attorneys who instituted this action on their behalf, did not know the attorneys and did not *knowingly* authorize or instruct the institution of the action on their behalf. One of the charging parties, Annie Tinnin, testified by deposition that she did not know any of the attorneys in the case, that the document providing for the authorization of counsel had been handed to her without explanation, that she did not know its purpose or why she was signing it, and that the document contained no name of any attorney. Examination as to this subject matter was prevented at the deposition proceeding of another charging party, Romona Pinnix, upon instruction of her counsel not to answer. It is interesting to note that the EEOC complaints which were signed by the named plaintiffs are identical in language and were all filled in by a typewriter with the same distinctive script type. Counsel in this case are known to represent civil rights organizations and to institute and participate in many cases alleging denials of civil rights. When Mrs. Pinnix was deposed she was instructed by counsel not to answer a question as to whether she was paying her attorney to bring this suit or whether the expenses were being handled by someone else. It is readily apparent that counsel in this case were not looking to the named plaintiffs for payment of counsel fees if the court did not award such fees to plaintiffs. Assuming *arguendo* that there is normally good reason to grant attorneys' fees to parties who will otherwise be obligated to bear expenses of Title VII litigation (I do not concede this assumption for reasons hereinafter set out in part II) it would seem unnecessary to award such fees in situations such as this where the named plaintiffs obviously will not be required to pay counsel fees in the absence of a court award.

The plaintiffs here were not injured by racial discrimination and were not forced to seek judicial relief in the way of damages for violations of civil rights *since they had sustained no damages*. The district court stated in its discussion:

"* * * Since it is clearly apparent that when plaintiffs applied for employment at defendant's Eno Plant on September 2, 1965, their primary motive was to test defendant's employment practices rather than to seek actual employment, and since there has been no showing whatever that defendant has since employed any females, either Negro or white, possessing plaintiffs' education, background, skill and work experience, and

since no vacancy of any type existed on September 2, 1965, plaintiffs are not entitled to recover back pay from September 2, 1965, *or counsel fees."* (Emphasis added.)

In short, this entire case smacks of of nothing but manufactured litigation and, to employ a rather harsh but well known characterization—"ambulance chasing"—with the plaintiffs themselves serving merely as puppets or as pawns in the game. To me, these "special circumstances" "would render such an award [of counsel fees] unjust" within the meaning of *Newman.*

## II

In holding that the court is bound in this case by *Newman,* the majority ignores the clear distinctions between a Title VII action here involved and a Title II action involved in *Newman.*

Congress clearly envisioned conciliation rather than litigation as the preferred means of enforcing Title VII rights. Representative Lindsay, then a member of the House Judiciary Committee, explained that "the procedures are carefully spelled out * * *. Those procedures are designed to give due protection to everyone. They command that there first be voluntary procedures." [1] The bill was at first drawn to permit a civil action "in advance" of conciliation efforts "if circumstances warrant," but these clauses were eliminated, as explained by Representative Celler, Chairman of the House Judiciary Committee, to make certain that conciliatory efforts were attempted before resort to court action.[2] The bill was passed by the House as amended, with the purpose of the amendment eliminating the "in advance" clause having been explained by Representative O'Hara as follows:

"There were some who believed that perhaps the language, as it stood, would authorize bringing the action in court before any attempt had been made to conciliate. We thought that

striking the language would make it clear that an attempt would have to be made to conciliate in accordance with the language * * * before an action could be brought in the district court." [3]

Clearly intending to promote conciliation rather than court enforcement of Title VII rights, Congress established a special commission, the EEOC, to enforce Title VII, with the power to investigate charges of unlawful employment practices and to endeavor to eliminate such alleged practices by informal methods of conference, conciliation and persuasion. Thus, the EEOC provides a party claiming aggrievement under Title VII with many services which would have to be performed by an attorney for one bringing a Title II action, such as investigation, efforts to achieve voluntary compliance, legal advice, etc.

In striking contrast, Title II makes no provision for an enforcement agency or commission comparable to the EEOC for the enforcement of Title II rights. Thus, an individual seeking to vindicate Title II rights generally proceeds directly to a federal court without the assistance of a governmental commission to assist him, thereby incurring many legal expenses which one claiming violations of Title VII rights would not incur. One claiming a Title II violation would normally be required to pay an attorney for investigative work, legal advice, and conference time in attempts to achieve voluntary compliance, etc. Thus, it is readily apparent that there is much greater reason to allow compensation for attorneys' fees to a successful Title II litigant than to a Title VII litigant, for, as the *Newman* Court recognized 390 U. S. at page 402, 88 S.Ct. at page 966, 19 L.Ed.2d 1263:

"When a plaintiff brings an action under that Title [Title II], he cannot recover damages. If he obtains an in-

1. 110 Cong.Rec. 1638, 2565 (Feb. 1, 8, 1964).

2. 110 Cong.Rec. 2566, 2576 (Feb. 8, 1964).

3. 110 Cong.Rec. 2566 (Feb. 8, 1964).

junction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II."

Due to the existence of the EEOC, there is obviously little likelihood that refusing to automatically grant attorneys' fees to Title VII litigants would discourage efforts to correct Title VII violations. Thus, the reasoning behind the Court's *Newman* decision simply does not apply to a Title VII action.

Finding no abuse of the court's discretion in refusing to allow attorneys' fees under the special circumstances involved in this case and concluding that *Newman* is inapposite here, I would affirm the district court's order in its entirety.