Murray TILLMAN et al., Appellants,

v.

WHEATON–HAVEN RECREATION
ASSOCIATION, INC., et al.,
Appellees.

No. 14957.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 7, 1974.

Decided April 15, 1975.

Rehearing and Rehearing En
Banc Denied

June 13, 1975.

Allison W. Brown, Jr., Washington, D. C. (Edward L. Genn, Washington, D. C., Melvin L. Wulf, New York City, and Ralph J. Temple, Washington, D. C., on brief), for appellants.

Henry J. Noyes, Rockville, Md., for appellees.

Carl E. Eastwick, Baltimore, Md. (John H. Mudd and H. Thomas Howell, Baltimore, Md., on brief), for E. Richard McIntyre, appellee.

Before BOREMAN, Senior Circuit Judge, BUTZNER, Circuit Judge, and MERHIGE, District Judge.

BUTZNER, Circuit Judge:

In Tillman v. Wheaton-Haven Recreation Association, Inc., 410 U.S. 431, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973), the Supreme Court held that a community swimming pool association, organized as a non-profit corporation, had unlawfully discriminated against black applicants for membership. It remanded the case for further proceedings, including consideration of the association's exclusion of black guests. Subsequently, the district court enjoined Wheaton-Haven from continuing its discriminatory membership and guest policies. It awarded the individual complainants compensatory damages and costs but dismissed their claim for punitive damages. The parties have not appealed any of these provisions of the decree.

Also on remand, the district court absolved the directors from all liability and allowed attorneys' fees only in the amount of $200 for the services of American Civil Liberties Union staff attorneys. The complainants appeal these provisions of the order, seeking to impose liability on the directors and to obtain fees for the services of volunteer lawyers who are not members of the ACLU staff. We reverse and remand the case for further proceedings.

I

The appellants brought this action for injunctive relief and damages against both the corporation and its directors, alleging that jointly and severally the appellees had violated the Civil Rights Acts of 1866 and 1964 [42 U.S.C. §§ 1981, 1982 and 2000a].[1] The evidence sus-

---

1. The statutes provide in pertinent part:
   42 U.S.C. § 1981.
   All persons within the jurisdiction of the United States shall have the same right in

   every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of per-

tained the appellants' allegations by disclosing that the directors, with the possible exception of E. Richard McIntyre, had adopted and enforced the discriminatory corporate policies that harmed the appellants. The district court awarded a total of $5,356 compensatory damages against the corporation. However, it held that proof of the directors' knowledge of the wrongfulness of the corporation's act was necessary to establish their personal liability. Accordingly, it dismissed the directors, finding that they did not know, nor in the exercise of due diligence could they have known, that the exclusionary policy of the corporation was illegal. The primary issue, therefore, is whether the directors are absolved from liability because they failed to realize the illegality of their acts.

■ An action brought under statutes forbidding racial discrimination is fundamentally for the redress of a tort. Curtis v. Loether, 415 U.S. 189, 195, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). There can be no doubt that the directors acted voluntarily and intentionally. This is ordinarily sufficient to support liability for tort when the act invades an interest which the law protects. See Prosser, Law of Torts § 8 (4th ed. 1971). Generally, a tortfeasor who acted intentionally cannot defend on the ground that he mistook the law. See Prosser, Law of Torts §§ 8 and 17 (4th ed. 1971). Sections 1981 and 1982 create no exceptions to these principles. In dealing with racial discrimination, the Supreme Court has pointed out that good intent and

good faith are not defenses. The law is directed at the consequences, not the motivation, of discrimination. Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Cooper v. Aaron, 358 U.S. 1, 15, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). The Civil Rights Act of 1866 governs those who are insensitive to the racial discrimination that the Act abolished as well as those who are aware of its scope. Jones v. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). We hold, therefore, that a complainant relying on § 1981 or § 1982 need not prove that the defendant knew the duties these statutes impose. Stated conversely, ignorance of the rights secured by these statutes is not a defense to an action brought to enforce them.

■ We now turn to the contention that the peculiar nature of the office of a private corporation's director shields him from liability under §§ 1981 and 1982. Our starting point is the construction placed on 42 U.S.C. § 1983, which is derived from the Act of 1871, to enforce the fourteenth amendment.[2] Drawing on English and American precedents, the Supreme Court held that § 1983, though cast in absolute terms, did not abolish the common law immunities granted some public officials in the performance of their duties. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Pierson v. Ray, 386 U.S. 547 (1967); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). In short, the Court interpreted § 1983 as neither enlarging nor diminishing traditional immunities of public officials.

sons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1982.

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property. 42 U.S.C. § 2000a.

(a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommo-

dation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

2. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Comparably, §§ 1981 and 1982 should be interpreted as neither enlarging nor diminishing the liability of directors under general corporation law for tortious acts performed nominally by the corporation.

█ If a director does not personally participate in the corporation's tort, general corporation law does not subject him to liability simply by virtue of his office. Fletcher v. Havre de Grace Fireworks Co., 229 Md. 196, 177 A.2d 908, 910 (1962). This rule may be applicable to one of the directors, E. Richard McIntyre, who claims that he did not participate in the adoption and enforcement of the corporation's racial policy. On remand, therefore, the district court should conduct an evidentiary hearing to assess McIntyre's defense.[3]

█ In contrast, a director who actually votes for the commission of a tort is personally liable, even though the wrongful act is performed in the name of the corporation. Tedrow v. Deskin, 265 Md. 546, 290 A.2d 799, 802 (1972); see 3 Fletcher, Cyclopedia of the Law of Private Corporations, §§ 1135, 1137 (Rev. ed. 1965). Proof that the director voluntarily and intentionally caused the corporation to act is sufficient to make him personally accountable. Aeroglide Corp. v. Zeh, 301 F.2d 420 (2d Cir. 1962). For example, in Peck v. Cooper, 112 Ill. 192 (1884), the court held the president of an omnibus company, who apparently also served as a director, individually liable for instructing the company's drivers "not to permit colored persons to ride in their omnibuses." The court ruled that the president's status as an officer of the corporation afforded him no protection, nor was he exonerated from liability because the corporation was also liable. Only when wrongful intent is an element of a tort can a director who acted innocently escape liability. Even in such instances, the defense does not arise from the peculiar nature of a director's office, but rather from the elements of

the tort. See, e. g., Mitchell v. Deeds, 49 Ill. 416 (1867) (fraud).

The directors, pointing out that counsel had assured them that their exclusion of blacks was legal and emphasizing that the district court and a majority of this court had ruled in their favor, claim exoneration on the basis of the affirmative defense of due diligence. The district court agreed and, relying on that doctrine, absolved the directors from all liability for their tort.

█ The flaw in the directors' argument is their failure to place the defense of due diligence in its proper context. Due diligence is a defense for corporate directors who are charged with failing to exercise reasonable care. Its genesis is the law of negligence. None of the cases on which the directors rely applies the doctrine to an intentionally tortious act against a third person. An analysis of the cases cited as supporting the directors exposes the fallacy of their position.

Escott v. BarChris Construction Corp., 283 F.Supp. 643 (S.D.N.Y.1968), dealt with a claim that a registration statement violated the Securities Act of 1933 because it contained false statements and material omissions. The court, at 283 F.Supp. 682, pointed out that § 11(b) of the Act created a due diligence defense. It therefore examined the transaction to determine whether the directors had made a reasonable investigation of the facts. The case does not support the directors' claim that due diligence is a defense to ignorance of the law.

Similarly, Securities and Exchange Commission v. Texas Gulf Sulphur Co., 401 F.2d 833, 854–856 (2d Cir. 1968), does not support the contention that a director may violate the law with impunity if he relies on counsel. The pertinent aspect of the case involved an insider's good faith defense under § 10b of the Securities Exchange Act of 1934. The court, after examining the facts, found

---

**3.** See Tillman v. Wheaton-Haven Recreation Association, Inc., 410 U.S. 431, 440 n. 12, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973).

that the insiders could not have reasonably believed that certain news was public at the time of their purchase orders. Accordingly, it denied the good faith defense. Again, the case turned on the directors' knowledge of the facts, not their knowledge of the law.

Spirt v. Bechtel, 232 F.2d 241 (2d Cir. 1956), and Gilbert v. Burnside, 13 A.D.2d 982, 216 N.Y.S.2d 430 (1961), aff'd 11 N.Y.2d 960, 229 N.Y.S.2d 10, 183 N.E.2d 325 (1962), come closer to supporting the Wheaton-Haven directors. Both cases were derivative actions in which the directors successfully asserted the defense that they had relied on counsel's interpretation of the law. The decisions are based on the premise that a director owes the corporation he serves the duty of due care. He therefore is liable to the corporation for negligence in the performance of his official duties. Henn, Corporations § 234 at 453 (2d ed. 1970). The directors' precaution in seeking the advice of counsel established that they acted with due care, and hence the defense of due diligence was available to them against the charge that they had negligently breached their duty to the corporation. The cases do not suggest that due diligence in seeking to ascertain the law would be a defense to a suit brought by a third person for an intentional tort.

Finally, Lobato v. Pay Less Drug Stores, 261 F.2d 406, 409 (10th Cir. 1958), is cited in support of the Wheaton-Haven directors' position. This case involves a products liability claim. It does not turn on the defense of due diligence. It is simply one of the many cases in which corporate officials were absolved from liability for the corporation's tort when they did not personally participate in the tort. Indeed, instead of supporting the Wheaton-Haven directors, it fully supports the black applicants for membership, and for that reason, its lesson about the responsibility of a director for a corporation's tort to a third person is worth quoting:

"It is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom. But merely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation. Specific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation. . . .

"The complaint failed to charge in specific terms any specific acts on the part of the [corporate officers] which constituted affirmative direction, sanction, participation, or cooperation in the alleged tortious act of the corporate defendant in selling to plaintiff a defective [product] which . . . caused his injury. Moreover, it affirmatively appeared from affidavits . . . that such defendants did not personally have anything to do with the assembly and sale of the [defective product]." 261 F.2d at 408.

██ The erroneous decisions made by the district court and by a majority of this court when the black applicants initially pressed their claims for membership in Wheaton-Haven afford the directors no support. The directors acted before these decisions were made, not in reliance on them. Furthermore, litigants who obtain a reversal in the Supreme Court, as the Wheaton-Haven plaintiffs did, should not be deprived of the fruits of their victory because lower courts decided the case incorrectly. The claim that a corporate official may violate §§ 1981 and 1982 with impunity because he exercised due diligence by relying on advice of counsel about the meaning of the law is designed to severely restrict the application of these statutes. Judi-

cial approval of this claim is warranted by neither precedent nor policy. (Due diligence is not a defense in this case because the black applicants' cause of action is based on an intentional tort, not on negligence.) The Wheaton-Haven directors knew all the relevant facts, and they fully intended to exclude all persons who could not qualify under their white-only policy. Their ignorance of the law, though engendered by lawyers' advice and corroborated by lower federal courts, is no defense. The nature and consequences of their tort is fully explained in Sullivan v. Little Hunting Park, 396 U.S. 229, 239, 90 S.Ct. 400, 405, 24 L.Ed.2d 386 (1969), where the Court established that black persons who have been excluded from a swimming pool association because of their race in violation of § 1982 are entitled to recover damages against a corporation and its directors. Quoting from one of its earlier cases, the Court said:

> "A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied . . . ."

Here, as previously cited cases show, proof of bad intent and evil motive is not essential to an action brought under the Civil Rights Act of 1866; nor is a lack of knowledge about the scope of the law a defense. We hold, therefore, that directors become personally liable when they intentionally cause a corporation to infringe the rights secured by §§ 1981 and 1982.

## II

Throughout this protracted controversy, the appellants were represented by eight lawyers. Two of the lawyers are employees of the American Civil Liberties Union Foundation, a subsidiary of the ACLU; one is an employee of the American Civil Liberties Union Fund of the National Capitol Area, a subsidiary of the ACLU affiliate for the Washington, D. C. area; and the remaining five were ACLU volunteers. The ACLU Foundation and Fund are nonstock companies, which the district court aptly described as charitable organizations. They participate in extensive litigation dealing with civil liberties, utilizing primarily volunteer lawyers who serve without charge. The appellants and the volunteer lawyers expressly agreed that any fees awarded by the court would be donated to the ACLU Foundation and Fund, and they informed the district court of their intention.

Initially, the district court declined to allow the appellants any attorneys' fees for several reasons: the defense was not frivolous; the appellees asserted their defense in good faith; and the appellants recovered compensatory damages. The court also ruled that fees would be equivalent to punitive damages because the agreement to donate them to charity established that neither the appellants nor their counsel would suffer pecuniary loss by denial of the award. See Tillman v. Wheaton-Haven Recreation Association, Inc., 367 F.Supp. 860, 866–68 (D.Md. 1973). Later, in an unpublished order, the district court modified its judgment and allowed fees in the amount of $200 for the five hours that ACLU staff attorneys worked. However, it affirmed its denial of fees for the volunteer lawyers.

Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3(b), furnishes a statutory warrant for the allowance of attorneys' fees to the appellants: "In any action commenced pursuant to this subchapter, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ." The appellants brought their action under 42 U.S.C. §§ 1981, 1982, and 2000a. The Supreme Court sustained their position under §§ 1981 and 1982 without reaching the claim based on § 2000a. Tillman v. Wheaton-Haven Recreation Assoc., Inc., 410 U.S. 431, 437, 439, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973). Wheaton-Haven also relied on the 1964 Act. In the district court and the court of appeals, it successfully pressed its claim

of exemption as a private establishment within the meaning of § 2000a(e).[4] *See* Tillman v. Wheaton-Haven Recreation Assoc., Inc., 451 F.2d 1211 (4th Cir. 1971). Not until the case reached the Supreme Court did the appellants prevail on this issue. Tillman v. Wheaton-Haven Recreation Assoc., Inc., 410 U.S. 431, 438, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973).

In Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), the Court held that § 2000a–3(b) should be construed to allow attorneys' fees unless the award would be unjust. A litigant who successfully prosecutes a suit under the Act was described by the Court as a private attorney general who has vindicated congressional policy by enjoining discrimination that harmed many people in addition to himself. There can be no doubt that in this case the appellants acted as private attorneys general. They sued to enforce the congressional policy against racial discrimination, as embodied in §§ 1981, 1982, and 2000a, in transactions involving contracts and property by an association masquerading as a private club under the Civil Rights Act of 1964, 42 U.S.C. § 2000a(e). The injunction that they ultimately obtained prohibited Wheaton-Haven from applying its racially restrictive policies against anyone in the geographical area served by the association. Their successful attack on Wheaton-Haven's claim to an exemption as a private club under § 2000a(e) was essential to the decision of the case, and it entitles the appellants to a fee under § 2000a–3(b).

The receipt of compensatory damages does not preclude the award of attorneys' fees. This court has long recognized that allowance of fees under the

private attorney general doctrine of *Piggie Park* is compatible with the award of back pay under Title VII of the Civil Rights Act of 1964. Robinson v. Lorillard Corp., 444 F.2d 791 (4th Cir. 1971); Lea v. Cone Mills Corp., 438 F.2d 86 (4th Cir. 1971). Moreover, the allowance of fees to those who serve as private attorneys general is not dependent on proof of bad faith. Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). Nor should the award be disallowed because the case presents a novel factual situation. Lea v. Cone Mills Corp., 438 F.2d 86, 88 (4th Cir. 1971); Miller v. Amusement Enterprises, Inc., 426 F.2d 534, 536 (5th Cir. 1970).

We conclude, therefore, that the district court correctly ruled on reconsideration that this case presented a proper occasion for the allowance of attorneys' fees. We next deal with the question of the adequacy of the award in light of the appellants' agreement with the volunteer attorneys to donate any allowed fees to the ACLU Foundation and Fund.

In NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), and NAACP v. Alabama, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964), the Supreme Court recognized the legitimate role of civil rights organizations in the enforcement of laws against racial segregation. Further, we have ruled that litigants who are under no obligation to pay attorneys associated with a civil rights organization are nevertheless entitled to recover attorneys' fees where allowances would otherwise be proper. *See, e. g.,* Brewer v. School Board of City of Norfolk, 456 F.2d 943 (4th Cir. 1972) (by implication); Lea v. Cone Mills Corp., 438 F.2d 86 (4th Cir. 1971) (by implication).[5] Reaching the same conclu-

---

**4.** 42 U.S.C. § 2000a(e) provides in relevant part:

> The provisions of this subchapter shall not apply to a private club or other establishment not in fact open to the public . . .

**5.** The implications of our decision are disclosed by dissenting and concurring opinions.

Lea v. Cone Mills Corp., 438 F.2d 86, 89 (4th Cir. 1971) (Boreman, J., concurring in part, dissenting in part); Brewer v. School Board of City of Norfolk, 456 F.2d 943, 954 (4th Cir. 1972) (Winter, J., concurring specially).

sion, the Court of Appeals of the Fifth Circuit said, "What is required is not an obligation to pay attorney fees. Rather what—and all—that is required is the existence of a relationship of attorney and client . . . " Miller v. Amusement Enterprises, Inc., 426 F.2d 534, 538 (5th Cir. 1970). *Accord,* Thompson v. Madison County Board of Education, 496 F.2d 682, 689 (5th Cir. 1974). Obviously, in these cases it was apparent that the litigants who had incurred no obligation for fees should not retain the awards.

▮ Not until recently has the contention been made that fees should be denied because they would be donated to the civil rights organization that assisted the litigants in presenting their grievances, instead of being paid to the lawyers. In each instance this argument against allowing fees has been rejected. *See, e. g.,* Wilderness Society v. Morton, 161 U.S.App.D.C. 446, 495 F.2d 1026, 1037 (1974); Brandenburger v. Thompson, 494 F.2d 885, 889 (9th Cir. 1974); Fairley v. Patterson, 493 F.2d 598 (5th Cir. 1974); *cf.* Hoitt v. Vitek, 495 F.2d 219, 221 (1st Cir. 1974); *see generally* Awards of Attorneys' Fees to Legal Aid Offices, 87 Harv.L.Rev. 411 (1973); Nussbaum, Attorney's Fees in Public Interest Litigation, 48 N.Y.U.L.Rev. 301 (1973). The rationale of Newman v. Piggie Park Enterprises, 390 U.S. 400 (1968), supports the award of fees even though the successful litigants and their lawyers have agreed to donate whatever they receive to a civil rights organization. In *Piggie Park,* the Court did not consider allowed fees to be a form of punitive damages, or, strictly speaking, to be simply compensatory. The purpose of the award, the Court emphasized, was to encourage people to seek judicial redress of unlawful discrimination. An award that ultimately is donated to a civil rights organization that opposes such discrimination can do much to further this goal. Litigation to secure the full measure of

the law's protection has frequently depended on the exertions of organizations dedicated to the enforcement of the Civil Rights Acts. Consequently, when an allowance of attorneys' fees is justified, it should be measured by the reasonable value of the lawyer's services. It should not be diminished because the attorney has agreed to contribute the money, in whole or in part, to a civil rights organization whose aims have stimulated him to work voluntarily.

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion. Of course, the directors are not liable for damages and costs already paid by the corporation. They are, however, jointly and severally liable with the corporation for additional attorneys' fees.

BOREMAN, Senior Circuit Judge (dissenting):

I note certain fundamental differences between my view of the matters here involved and the view of the majority. I feel compelled to call attention to my brothers' efforts to treat the defense of due diligence as one of mere ignorance of the law and their refusal to accept the considered findings of the district court. Respectfully, I dissent.

**I**

In response to an informal inquiry concerning a possible membership by one of the appellants, a black doctor, the board of directors of the Wheaton-Haven Recreation Association promulgated a white-only membership policy in the summer of 1968. This policy had been adopted only after obtaining independent and separate opinions of two attorneys that it would be legal. The policy was later extended to restrict the admission of guests to those who were relatives of members and was ratified by a vote of the stockholders in the fall of the same year, 1968. It was at that time that this litigation was initiated.[1]

---

1. Suit was brought against the Association and its directors individually, as a class action under 42 U.S.C. §§ 1981 and 1982 and Title II of the Civil Rights Act of 1964, to require the defendants to cease discriminating with respect to membership and guests on the basis of race. The cause was prosecuted with the assistance of A.C.L.U. staff and volunteer attorneys.

Approximately one and one-half years after the directors adopted this policy the Supreme Court handed down its decision in Sullivan v. Little Hunting Park, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). This was the first hint that private associations such as Wheaton-Haven might be within the purview of the civil rights statutes barring racial discrimination.[2] According to the testimony of one of the directors, the board reconsidered its policy at that time and concluded that their membership rules remained legal. That conclusion was subsequently confirmed in this litigation by the decision of the district court, granting summary judgment to Wheaton-Haven in an unreported opinion, and the decision of this court affirming, 451 F.2d 1211 (4 Cir. 1971). Only when the Supreme Court reversed the lower courts, 410 U.S. 431, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973), was it determined that the directors of Wheaton-Haven had acted illegally.

After holding that the Association was prohibited by law from discriminating on the basis of race the Supreme Court remanded for further proceedings to determine the appropriate relief. Obediently, on remand, the district court enjoined Wheaton-Haven from continuing to practice its racially exclusionary policies and then held a hearing to decide whether further relief was mandated. The court issued a decision and order, 367 F.Supp. 860 (D.Md.1973), followed by a supplemental order and judgment which provided compensatory damages, out-of-pocket expenses, court costs, and two hundred dollars attorneys' fees for the efforts of the A.C.L.U. staff attorneys, all to be assessed against the corporation. The court declined to award punitive damages and refused to award attorneys' fees for the value of the services of the volunteer attorneys; it also absolved the directors of individual liability. On appeal, the appellants seek the award of additional attorneys' fees for the value of the volunteer services and a finding of individual liability of the directors. The majority finds in favor of the appellants on both of these issues but I cannot agree.

II

In holding the directors individually liable, it appears that the majority has sought to distinguish the defense asserted by the directors against the claim of personal liability by treating it as mere ignorance of the law. The directors maintain that, in enacting the racially discriminatory policy, they exercised due diligence in determining the legality of that policy and thus should not be liable for a legitimate decision that subsequently was found to be wrong. The majority opinion imposes liability because good faith or lack of bad intent are not defenses provided by the controlling statutes. It also finds that ignorance of the law does not constitute a defense to a claim of individual director liability. However, that is not the defense asserted by the directors.

I agree with my brothers that ignorance of the law is not inherently a defense to an action brought under §§ 1981 and 1982, and that bad intent is not a necessary element of the tort. I also agree that §§ 1981 and 1982 neither expand nor diminish the liabilities of directors under general corporation law. Thus, we all agree that all defenses derived from general corporation law remain available to defendants in actions brought under §§ 1981 and 1982. Therefore, the defense asserted here, due diligence, is a valid defense to this action, if it is available from general corporation law, regardless of whether the statutes recognize ignorance, good faith, or lack of bad intent. Due diligence implies affirmative action in an effort to ascertain the law and is not the same as ignorance thereof; it means that after diligent ef-

---

**2.** Sullivan v. Little Hunting Park, *supra,* was on appeal from the dismissal of the complaint by a Virginia trial court. The Supreme Court of Appeals of Virginia refused to hear the appeal on procedural grounds.

fort it was impossible for these directors to know they were violating the law.

That due diligence is a defense to individual director liability for illegal acts is beyond question. For example, it is available as a defense for violations of the Securities Acts. Escott v. BarChris Construction Corp., 283 F.Supp. 643, 682–683 (S.D.N.Y.1968); Securities and Exchange Commission v. Texas Gulf Sulphur Co.; 401 F.2d 833, 854–856 (2 Cir. 1968). More specifically, due diligence, as manifested *by reliance on the advice of counsel,* has been successfully asserted as a defense to charges of mismanagement of the corporation in stockholders' derivative suits even though the defendant directors in those cases bore a *fiduciary* relationship to the shareholders. Spirt v. Bechtel, 232 F.2d 241, 247 (2 Cir. 1956); Gilbert v. Burnside, 13 A.D.2d 982, 216 N.Y.S.2d 430 (1961) aff'd 11 N.Y.2d 960, 229 N.Y.S.2d 10, 183 N.E.2d 325 (1962). In fact due diligence is implicitly a defense in the federal cases concerning individual director liability for torts of the corporation.

> Specific direction or sanction of, or active participation or cooperation in, a *positively wrongful* act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability. . . . Lobato v. Pay Less Drug Stores, Inc., 261 F.2d 406, 409 (10 Cir. 1958). (Emphasis added.)

A *positively wrongful* act is required to impose individual liability. An act which, after diligent examination and consideration, appeared legal in every respect cannot be considered "positively wrongful."

My brothers attempt to distinguish these cases on two grounds. They point out that the cited decisions involve acts of negligence rather than the commission of an intentional tort and that they deal with mistakes of fact rather than of law. However, the principle with respect to culpability upon which I rely remains the same; that is, when one has done all that he possibly could to assure himself that he is acting properly and lawfully he lacks the personal guilt which is necessary to impose liability. This is true whether his conduct be classified as negligent or intentional; whether it be based on an inability to ascertain the facts or the law. Some element of·fault or culpability is present in every tort. Taylor v. Cincinnati, 143 Ohio St. 426, 55 N.E.2d 724, 155 A.L.R. 44 (1944). Even where the law imposes traditional absolute liability culpability is still a requisite element. Taylor v. Cincinnati, *supra.* The exercise of due diligence in the instant case goes beyond the question whether a particular degree of care was exercised by the directors; the question is whether they were at fault. The cases I have cited support the proposition. One who has diligently sought to act properly is without fault or culpability and, therefore, is without guilt. Due diligence may prove not only that a certain standard of care has not been violated but also that, where an injury has resulted, liability does not follow because there is no guilt.

The majority takes the position and states that Escott v. BarChris, *supra,* "does not support the directors' claim that due diligence is a defense to ignorance of the law." However, I repeat, the directors here are not defending on the basis of *ignorance* of the law. They are defending on the ground that, despite their diligent efforts, it was *impossible* for them to ascertain the law. *BarChris* does support the claim that when the directors have made a reasonable investigation they should not be found personally liable for unwitting illegal acts which resulted from that investigation. The same rule is asserted in the *Texas Gulf Sulphur* case and the only distinction the majority seeks the draw as to that case is that it turned on the directors' knowledge of the facts, not their knowledge of the law. This, to me, is a distinction without a difference. The principle remains valid that one should

not be found liable when he has done all that he reasonably could have done to ascertain either the facts or the law upon which he based his decision.

As to Spirt v. Bechtel, *supra,* and Gilbert v. Burnside, *supra,* my brothers merely argue that the cases do not suggest that due diligence in seeking to ascertain the law would be a defense to an action brought by a third person for an intentional tort. But, once again, those cases do support the concept that where one is without personal fault he is without liability. The cases, *Texas Gulf Sulphur, BarChris,* and *Lobato,* did involve injuries to third parties and proof of personal guilt was required before liability to the third party could be imposed upon those directors. That principle is stated by the *Bechtel* and *Burnside* opinions as well. Differences in factual context do not detract from or destroy the concept of what is fair and just.

My brothers also contend that the *Lobato* case was decided for reasons different from those contained in the passage quoted herein, *supra.* This fact does nothing to weaken the validity of the rule therein stated and upon which I rely. To create liability the act must be *positively wrongful.* Thus, the case sustains my view as well. In short, the majority's efforts to distinguish these cases fail to reach the heart of the matter. All five decisions approve the principle that guilt does not follow when one has done all he reasonably can to comply with the law.

By way of emphasis, it is quite clear that corporate law recognizes due diligence as a defense to imposition of individual liability upon directors for their torts and illegal acts. Since the majority concedes that §§ 1981 and 1982 recognize the defenses provided by general corporation law, the fact that those statutes do not recognize ignorance, good faith, or lack of bad intent as defenses does not preclude the assertion of due diligence as a defense. With all due deference, it appears that the majority either confuses the defenses or the sources thereof. They equate the inability of the defendants to ascertain the law with ignorance of the law. But it is not with mere ignorance that we are concerned. Here, it was utterly impossible for the directors to ascertain and know the law; that is what absolves them of guilt.

Having found that the defense is available, the actual exercise of due diligence by these directors is also beyond question. The operative facts giving rise to the charge of discrimination occurred fully one and one-half years prior to the first authoritative judicial indication that the policy might be unlawful. Two separate and independent opinions of counsel were relied upon by the directors. When *Sullivan* was decided, the directors again evaluated their policy in an effort to assure compliance with the law. Prior to the *Sullivan* decision it would have been *impossible* for them to have known they were acting illegally. Subsequent to that ruling, their conduct, consistent with the advice of counsel on which they relied, was still validated by two federal courts. To hold the directors to a standard of legal acumen greater than that possessed by the federal judiciary would be unconscionable.

The majority asserts that litigants should not be deprived of the fruits of their victory because lower courts decided the case incorrectly, admonishing that to allow corporate officials to violate §§ 1981 and 1982 with impunity is designed to severely restrict the application of these statutes. The decision of the lower court, which I would sustain, refutes both assertions. The plaintiffs recovered an ample judgment as the fruits of their victory. No one seeks to deprive them of that. The majority's imposition of additional awards will not inure to the benefit of the litigants. On the other hand, adoption of my views would deprive the litigants of nothing. Likewise, the district court in no way indicates that directors may act with impunity. The circumstances found pertinent

here, *e. g.*, multiple advice of counsel, no guidance from prior court decisions, and one hundred years of custom which was contrary to the eventual Supreme Court decree, confirm the diligence of the directors. Such circumstances, when present, are not likely to lead to violations with impunity or erode the application of the statutes nor will they cause plaintiffs to be deprived of the fruits of their victory. To assume or predict such results in the face of the district court's opinion is less than reasonable.

Again, I emphasize that due diligence is a defense available to these directors from general corporate law, and that due diligence was exercised in this instance. My conclusion is consonant with that of the district court which absolved the directors of individual liability because of their diligent efforts to comply with applicable law. The factual findings of the district court are entitled to great weight and should not be set aside unless clearly erroneous. Rule 52(a) Fed. R.Civ.P. I cannot concur with the majority in failing to recognize this defense or to accord due deference to the findings of the district court. I would decline to hold the directors individually liable.

### III

The majority's decision also overrides the limitations of the award of attorneys' fees granted by the district court and remands the case for the award of additional fees consistent with my brothers' view that compensation should be awarded for the value of the services of the volunteer attorneys. While I do not disagree with the proposition that awards of fees for proffered voluntary assistance may properly be ordered in some instances, I cannot overlook the majority's failure to respond to the special circumstances found and relied upon by the district court in limiting its award. I find these special circumstances persuasively compelling here.

The Congressional policy on which an award of fees is predicated confers upon the district court, in the exercise of its *discretion*, the determination of such awards. 42 U.S.C. § 2000a–3(b). That discretion has been limited by the judicial policy set forth in Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), which holds that the court's discretion should be exercised in favor of awards unless special circumstances would render the award unjust. I concede that *Newman* has been interpreted to hold that circumstances such as the award of compensatory damages, lack of bad faith on the part of defendants, the donation by recipients of the fees awarded to civil rights organizations, lack of obligation on the part of plaintiffs to pay counsel fees, or the meritorious nature of the defendant's case are not, *per se, special* circumstances that would render the award of fees unjust. Nevertheless, none of those holdings absolutely precludes consideration of such factors in the discretionary determinations of the district court. While the presence of elements such as good faith or the grant of compensatory damages are no longer *absolute* bars to the award of counsel fees, such factors may still give rise to unique circumstances that would make the award of such fees unjust in a specific instance. To hold otherwise would compel a mechanistic application of fee awards which would preclude entirely the exercise of discretion by the district court.

In the instant case the court found the unique circumstances which distinguished this litigation from the general principles recited by my brothers. It indicated its cognizance of those general rules, granting them to be true in every respect, but found two differentiating factors to which the majority has made no attempt to respond. First, the district court found the highly meritorious nature of the legal posture of the directors to be extremely compelling in this matter. They had relied upon the

advice of counsel and had in all respects sought to be in full compliance with the law. Only three years ago, and four years after the decision in Newman v. Piggie Park Enterprises, *supra*, this court, sitting *en banc*, rejected the position now being urged by my brothers that attorneys' fees be mechanistically awarded without regard to the meritorious nature of the defendant's case.

> We cannot fault the school board because it did not demonstrate greater powers of clairvoyance than either the District Court or this Court in anticipating the extrapolations of *Brown* by the Supreme Court. Brewer v. School Board of Norfolk, Virginia, 456 F.2d 943, 951 (4 Cir. 1972).

*See also*, Felder v. Harnett County Board of Education, 409 F.2d 1070, 1075 (4 Cir. 1969). Similarly, I cannot fault these directors for failing to predict the path the law would take concerning private associations. In both of these post-*Newman* cases this circuit, in the face of arguments to the contrary in concurring opinions, recognized that the meritorious legal posture of the defendants was a factor mitigating against the award of fees. This distinction has also been relied upon in Kelly v. Guinn, 456 F.2d 100, 111 (9 Cir. 1972), to deny attorneys' fees to plaintiffs in a school desegregation case when the legal duty of the school board was uncertain and the board evinced an intent to discharge its responsibilities under the law when those responsibilities were determined. The defendants here also sought to clearly ascertain the law and comply with it. Yet the majority reiterates the general principle that good faith does not bar the award of fees and ignores the specific findings of the district court, which, like the Ninth Circuit in *Kelly* and this circuit in *Brewer*, found a valid distinction from those facts.

Second, the court found that, on the facts of this case, an additional award of attorneys' fees would not promote the Congressional policy of encouraging private attorneys general to bring suits in civil rights matters because the fund awarded might be applied to totally *unrelated* charitable works and the Congressional purpose was satisfied by compensating the A.C.L.U. staff. Similarly, in Hoitt v. Vitek, 495 F.2d 219, 221 (1 Cir. 1974), the court declined to award additional fees when the purposes of the Congressional policy would not be advanced. Nevertheless, the majority ignores this distinction, merely reiterating the general principle that awards are not precluded because they inure to the benefit of a civil rights organization. Thus, two valid distinctions have been found; either of them standing alone would make the award of additional fees unjust.

In light of the thoroughly competent review by the trial court of the principles involved in the exercise of its discretion that court's determination should not be brushed aside without even the slightest consideration; yet that is what the majority opinion does. Primary discretion as to attorneys' fees rests with the trial court and its exercise should not be overturned unless clearly abused. Lea v. Cone Mills Corp., 467 F.2d 277, 279 (4 Cir. 1972). Two distinct elements set this case apart from the general principles recited by the majority. I would deny the award to the appellants of additional attorneys' fees.

## IV

In sum, the majority decision on this appeal is to impose individual liability upon directors of a corporation who have diligently sought to ascertain the law applicable to their policies and, at all times, to comply with the law; it also would mechanistically award attorneys' fees despite the finding of special circumstances which would render the award unjust. I cannot subscribe to either result on the undisputed facts involved in this litigation.

## ORDER

The appellees' petition for rehearing and suggestion for rehearing en banc has been submitted to the court. A poll of the court was requested, and a majority

of the judges eligible to vote have voted to deny rehearing and rehearing en banc.

It is, therefore, ordered that rehearing and rehearing en banc be and they are hereby denied.

Judge Russell, Judge Field, and Judge Widener dissent from the denial of rehearing en banc for the reasons stated in Judge Boreman's dissenting opinion.