**AMERICAN FRIENDS SERVICE COM-
MITTEE et al., Plaintiffs,**

**v.**

**The UNITED STATES of America,
Defendant.**

**Civ. A. No. 70–1405.**

United States District Court,
E. D. Pennsylvania.

Dec. 31, 1973.

Marvin Moses Karpatkin, Steven Delibert, Karpatkin, Ohrenstein & Karpatkin, New York City, Alan R. Hunt, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiffs.

Richard A. Scully, Tax Div., U. S. Dept. of Justice, Washington, D. C., for U.S.A.

## FINDINGS OF FACT

NEWCOMER, District Judge.

Pursuant to Federal Rule of Civil Procedure 52(a) the Court makes the following Findings of Fact and Conclusions of Law.

1. The American Friends Service Committee (hereinafter AFSC), is a religious corporation which was founded in 1917, with the original purpose of performing war relief work in World War I; it was intended to provide employment for conscientious objectors to war who were to perform alternative civilian service. Throughout its history since that time, although its operations are much expanded, the AFSC has continued to work in the same vein, engaging in religious, charitable, social, philanthropic and relief work throughout the United States and in foreign countries. The corporation is governed by a board of directors consisting of forty members of the Religious Society of Friends, or Quakers, and it employs a paid staff of 450 to 500 persons, as well as several thousand volunteer workers. Because of the nature and goals of AFSC, a large proportion of its employees—approximately a third—are members of the Religious Society of Friends; a large proportion, by reason of religious training and belief, are conscientiously opposed to participation in war in any form; and among the male employees, many have been recognized by the Selective Service System as conscientious objectors. Because of its nature and goals, and because of the character of the men and women who are drawn to work for it, the AFSC as a body is almost unique in its corporate concern with matters of war and peace and with matters affecting the consciences of its employees.

2. Plaintiff Lorraine Cleveland is an employee of the AFSC, and with occasional interruptions, has worked for the AFSC continuously since October 1944; she has held a wide variety of positions, and presently is Director of the Africa and Middle East Programs in the AFSC's International Service Division. She has been a member of the Religious Society of Friends since 1947. Her late husband, who also spent much of his working life as an employee of Quaker

organizations, was a duly recognized conscientious objector during World War II, who performed authorized civilian alternative service in a civilian public service camp. Mrs. Cleveland has been a pacifist since 1930, and because of her deeply held religious beliefs, she is conscientiously opposed to participation in war in any form. As a part of this religious and conscientious objection to war, it is contrary to her religious principles to contribute to the waging of war through the voluntary payment of taxes which are put to that purpose.

3. The individual plaintiff Leonard Cadwallader began employment with the AFSC in the autumn of 1969, and held a position as the Director of Youth Programs until he resigned from the Service Committee in the autumn of 1971. He is a "birthright" Quaker, having been born in a Quaker family, and having been a member of the Religious Society of Friends throughout his life. Mr. Cadwallader has been conscientiously opposed to participation in war in any form throughout his life; he was recognized as a conscientious objector by the Selective Service System, and was permitted to perform alternative civilian service in lieu of induction into the military. In 1969, Mr. Cadwallader, like Mrs. Cleveland, had come to the conclusion that his religious opposition to war extended to a conscientious duty not to pay voluntarily those taxes which were used to finance war and military activities.

4. Dr. Edwin Bronner is an expert on the history of Quakerism in the United States.

5. Dr. Bronner's deposition testimony establishes that, although there is no formal creed or dogma in Quakerism, it has been true throughout the history of the Religious Society of Friends, since its beginnings in the seventeenth century, that most Quakers have considered it an integral part of their faith to bear witness to the beliefs which they hold. It has always been the prevailing view that simple preaching of one's beliefs is not sufficient, and that one's actions must accord with and give expression to one's beliefs. Many of the employees of the AFSC, including particularly the individual plaintiffs Cleveland and Cadwallader, share in this belief, and for these employees, the operation of the withholding tax, which leaves them no option as to the payment of the taxes which they conscientiously question, operates as a direct abridgment of the expression and implementation of deeply cherished religious beliefs.

6. During the decade of the 1960's, and especially in the latter part of that period, the AFSC began to face increasing difficulty as a result of its acts as an employer, in performing its statutory duty of withholding federal income taxes from the salaries of its employees. As ever larger numbers of its employees came to believe that they could not, in good conscience, voluntarily pay taxes in support of war, both employees and contributors became more concerned with the AFSC's continued withholding of employee taxes, and the consequent frustration of the employees' expression of their religious beliefs. Many employees, including the individual plaintiffs in this action, questioned whether they could continue their employment with AFSC if it did not cease withholding their taxes. Several employees directly threatened to resign over this or related issues, and at least one employee, Thomas Flower, actually did resign over war tax issues.

7. One of the 300 or so regular employees of AFSC was shown to have resigned in protest over what he considered to be AFSC's failure to take more vigorous action to stop withholding taxes alleged to be used for military purposes. However, that employee was replaced from among a large number of applicants for employment.

8. The plaintiff, Leonard Cadwallader, has resigned from AFSC for reasons unrelated to the withholding tax issue and plaintiff, Lorraine Cleveland, disavows any intention to resign even if AFSC is required to withhold the taxes to which she objects.

9. By letter to Bronson Clark, the Executive Secretary of AFSC, the individual plaintiffs Cleveland and Cadwallader, on December 16 and December 15, 1969, respectively, formally requested that the AFSC discontinue withholding from their salaries the proportions of their federal taxes which were allocated for military and war purposes. Mrs. Cleveland, relying upon the December 1968 issue of the "Washington Newsletter" of the Friends Committee on National Legislation (hereinafter "FCNL"), specifically requested that 51.6% of her taxes not be withheld; Mr. Cadwallader mentioned no specific figure, but understood that if the AFSC honored his request, it would use the FCNL figure. The AFSC honored these requests, as well as similar requests from other, similarly situated employees, and ceased withholding from those employees 51.6% of the federal taxes which it was otherwise obligated to withhold.

10. Although the amounts in question were not withheld from the respective employees' salaries, the AFSC nevertheless paid equivalent amounts from its own treasury over to the Internal Revenue Service, in an effort to have the maximum compliance possible with the law, consistent with the demands of conscience, and in order to avoid the invocation of criminal penalties against its officers. It was stipulated before trial that a payment of $574.09 was remitted on February 10, 1970, representing such payments for five employees, including the individual plaintiffs, for the final quarter of 1969. It was also stipulated that on February 12, 1970, the AFSC submitted to the Internal Revenue Service a claim for refund for the amount in question, explaining the religious and conscientious position of itself and its employees. On March 5, 1970, a letter was directed to the AFSC by Earl L. Torgerson, Director of the Internal Revenue Service, Mid-Atlantic Region, denying the claimed refund. The AFSC therefore was compelled to make a double payment of the amounts in question, first to its employees, and then to the Internal Revenue Service.

11. Both individual plaintiffs, Mrs. Cleveland and Mr. Cadwallader, filed on or before April 15, 1971, the statutory deadline, individual income tax returns for the tax year 1970, showing in full the wages which they had earned, and the amounts which had not been withheld by their employer. Both enclosed letters in which they stated their refusal to pay voluntarily the tax involved, and informed the Internal Revenue Service of their religious and conscientious reasons for such refusal.

12. The Internal Revenue Service, by means of levies against the assets of both individual plaintiffs, subsequently collected the full amount of taxes due and owing from each of them, and collected as well interest at the rate of 6% per year, and a penalty at the rate of ½ of 1% per month.

13. The AFSC has continued not to withhold the disputed amount of tax on the wages of the two individual plaintiffs, continuing to the date of trial in the case of Lorraine Cleveland, and to the time of his resignation for Leonard Cadwallader. In all cases, both individual plaintiffs have reported on their tax returns all wages earned, and all taxes due and not withheld, and in all such cases, the Internal Revenue Service has collected the amount of taxes not paid voluntarily, together with 6% annual interest and a penalty at the rate of ½ of 1% per month.

14. The failure of the AFSC to withhold the taxes in question from the wages of the individual plaintiffs, and the consequent use by the government of levies to collect these taxes, has caused some additional difficulty or expense in collection. The issuance and service of a notice of levy is a regular and routine operation for the Internal Revenue Service and both the AFSC and the banks to which the Internal Revenue Service has looked for collection have honored the levies which have been served on them.

15. The 6% annual interest rate and the ½ of 1% per month penalty are calculated at a rate to place the taxpayer in the same position as those who voluntarily pay their taxes at the required times and to reimburse the government for any collection costs which it might incur in resorting to the levy process.

16. However, the above 6% interest rate and penalty set forth in finding No. 15 above would not reimburse the government for collection costs which would result from use of the levy process in cases where small amounts of money are due the Internal Revenue Service.

17. The AFSC's cessation of withholding of the proportion of taxes involved has substantially eased the burden on the consciences of the employees thereby affected; it has permitted them to face their government directly over the issue of whether they will pay voluntarily those of their taxes which are put to military and war purposes, and thereby permitted them to bear witness to their beliefs as their most deeply held religious convictions require them to do.

18. The cessation of withholding by the AFSC has likewise substantially relieved the earlier pressures on AFSC from its other employees and contributors, who were concerned with AFSC's role in the involuntary collection of war taxes from its employees; it has likewise reduced the burden of conscience borne by the AFSC itself as an organization in interfering with the expression of the religious and conscientious beliefs of its employees.

19. The figure of 51.6% as the proportion of the federal budget expended for military and war purposes is based on a computation by the Friends Committee on National Legislation of actual appropriations made by the Congress in the calendar year 1968. The computation and analysis is set forth in detail, with accompanying tables and charts, in the December, 1968, issue of the FCNL "Washington Newsletter." Miss Frances Neely, legislative secretary of

FCNL, testified on the research and statistical analysis which is annually performed by FCNL researchers, and which was performed for the calendar year 1968, in arriving at the figures reported in the Newsletter. The figure represents a reasonable, rational and fair percentage amount which can be used to determine the proportion of the individual plaintiffs' taxes which are spent for purposes to which they conscientiously object.

20. The government has an interest in maintaining a uniform, efficient and orderly method of collecting federal income taxes.

21. The collection of such taxes by means of the withholding method is the most efficient means of collection devised by the government to accomplish the objectives set forth in finding No. 20 above.

## DISCUSSION

This case is one of first impression and presents us with several difficult questions under the First Amendment of the United States Constitution dealing with the free exercise of religion.

Jurisdiction over the subject matter does exist pursuant to 28 U.S.C. § 1331(a) with respect to the individual plaintiffs Lorraine Cleveland and Leonard Cadwallader, and 28 U.S.C. § 1346(a)(1) gives us subject matter jurisdiction over the refund claim of the AFSC. The complaint alleges that with respect to the two individual named plaintiffs, the amount involved in this particular controversy exceeds the sum of $10,000 exclusive of interest and costs.

■■ Plaintiffs Cleveland and Cadwallader each have standing to attack the withholding method of collecting their taxes because such method of collection directly forecloses their ability to freely express their opposition to the particiption in war in any form, which opposition is a vital and fundamental part of their religious practice as Quak-

ers. Section 7421(a)[1] of the Internal Revenue Code of 1954 does not bar the suit by plaintiffs Cleveland and Cadwallader because they do not seek to restrain "the assessment or collection of any tax" but rather are contesting only the method of collection utilized by the Internal Revenue Service as it applies to the admittedly unique facts of this case. The government argues that plaintiffs Cleveland and Cadwallader are indeed attempting to enjoin the collection of a portion of their federal income taxes by means of employer withholding and that the attack by plaintiffs on the method of collection only rather than on the collection of the tax itself, is simply a distinction without a difference.

The government relies on Enochs v. Williams Packing Co., 370 U.S. 1, 82 S. Ct. 1125, 8 L.Ed.2d 292 (1962) for the proposition that § 7421(a) bars a suit in this case. However, a close reading of Enochs discloses that § 7421(a) was not intended to foreclose the kind of constitutional inquiry which presently confronts this Court.

> "The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." 370 U.S. at 7, 82 S.Ct. at 1129.

Applying this language to plaintiffs Cleveland and Cadwallader, it seems clear to us that their claim against the government in this case cannot be characterized as a suit for refund of their federal income taxes. They have not alleged that the government owes them any money and with respect to their individual claim, there is no disputed sum in existence for which a refund action would lie at the present time. The government has in fact collected all amounts of tax with interest and penalty which are due it so that we would have no power to enjoin the collection of taxes presently in dispute because none are in existence.

The clear meaning of § 7421(a) and *Enochs*, we believe, is that this Court does not have the power to enjoin the collection of taxes as long as the taxpayer has the right to sue for a refund. Here plaintiffs Cleveland and Cadwallader are objecting to one of several means of collection of a certain portion of their federal income taxes. They are not contesting the validity of the tax itself or the use to which the tax is put, and they are not seeking a refund of any tax alleged to be due to them.

■ The constitutionality *vel non* of the tax itself and the uses to which the tax monies are put are irrelevant to the question involved herein. Plaintiffs Cleveland and Cadwallader ask this Court to consider a less restrictive alternative to the withholding method of collecting a portion of their taxes so that they will be able to refuse to pay that portion of their taxes which are used for war purposes and thus fulfill the requirement of their faith that they bear witness to their peace testimony by refusing to participate in war in any form. We believe we have the power to entertain such a suit and to grant appropriate relief, if necessary.

The AFSC, however, is on a different footing. The AFSC as plaintiff employer herein is suing for a refund of taxes paid by it pursuant to 26 U.S.C. § 3403. Jurisdiction for such refund is posited on 28 U.S.C. § 1346(a)(1).

■ The government argues that the AFSC is not a taxpayer and therefore cannot maintain this suit for refund. It is true that only the taxpayer or someone claiming in the interest of a taxpayer may bring a suit for refund under § 1346(a)(1). See First National

---

I. [Section] 7421. [as amended by Section 110(c), Federal Tax Lien Act of 1966, P.L. 89–719, 80 Stat. 1125] *Prohibition of suits to restrain assessment or collection*

   (a) *Tax*—Except as provided in sections 6212(a) . . ., no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

Bank of Emlenton, Pa. v. United States, 265 F.2d 297 (3rd Cir. 1959). The government overlooks, however, the fact that the AFSC did not withhold 51.6% of the taxes required to be withheld under § 3402[2] of the Internal Revenue Code of 1954 of certain employees, but paid such amount to its employees. However, the AFSC is liable for the full payment of the tax required to be deducted and withheld regardless of whether or not it withholds the tax.[3] The problem is that the AFSC would be entitled to a refund if we find that plaintiffs Cleveland and Cadwallader are entitled to the relief which they seek because the government will have collected the tax due to it two times instead of only once. In other words, AFSC's status as a taxpayer turns on whether or not it is required to continue to withhold 51.6% of the taxes of certain of its employees pursuant to § 3403 of the Internal Revenue Code because then and only then will it be entitled to a refund for overpayment under § 6414.[4]

It would appear that the AFSC would have standing to make a claim for a refund under § 6414 "to the extent that the amount of such overpayment was not deducted and withheld" by it. How else could such a suit be maintained in the case of an overpayment. We find that the AFSC is a "taxpayer" for purposes of § 1346(a)(1), and we therefore have jurisdiction over the subject matter with respect to it.

█ We come then to the question of whether or not the withholding method of collecting a certain portion of plaintiff's taxes which we have found to be used for war related purposes is unconstitutional as applied to the plaintiffs Cleveland and Cadwallader as a restriction on the free exercise of their religious beliefs as Quakers. This is indeed a unique and difficult case and one which we admit has troubled us from its inception.

The plaintiffs contend that we must test the government's method of withholding taxes by first determining whether the claimed protected activity is religiously motivated; second, whether that activity is restricted or abridged by the challenged provision; and third, if the first two requirements are met, whether there is a sufficiently strong or compelling governmental interest in the use of the challenged provision that the otherwise protected activity of bearing witness by having the right to refuse to pay that portion of their taxes used by the government for war purposes may be restricted or abridged. See Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). The government gives us no such help in articulating what test it would have us apply but rather asserts that Congress has the power to collect taxes to·be used for the purposes of war and therefore has the power to collect such taxes by whatever means it desires.

There is no doubt in our minds that the claimed protected activity of bearing witness by refusing to pay the war taxes involved herein on the part of plaintiffs Cleveland and Cadwallader is religiously motivated. Each plaintiff has demonstrated his and her strong belief in the teachings of the Quaker religion by establishing a long history of membership in and activities related to the Quaker religion and as employees of the American Friends Service Committee. Each is conscientiously opposed to the participation in war in any form. Each ob-

2. [Sec.] 3402 [as amended by Sec. 101(a), Tax Adjustment Act of 1966, P.L. 89–368, 68A Stat. 3] *Income tax collected at source* (a) *Requirement of withholding.*—Every employer making payment of wages shall deduct and withhold upon such wages (except as otherwise provided in this section) a tax determined in accordance with the following tables. . - .

3. See 26 U.S.C. § 3403.

4. [Sec.] 6414 *Income tax withheld*
   In the case of an overpayment of tax imposed by chapter 24, or by chapter 3, refund or credit shall be made to the employer or to the withholding agent, as the case may be, only to the extent that the amount of such overpayment was not deducted and withheld by the employer or withholding agent.

jects to the withholding method of collecting 51.6% of their taxes on constitutional grounds. The government has produced no evidence which would rebut plaintiffs' showing that bearing witness is an integral part of their religious practice as Quakers, and we find that the claim protected activity is religiously motivated within the meaning of the First Amendment.

The second question which we must consider is whether the activity of bearing witness to the participation in war in any form by refusing to pay certain war taxes has been restricted or abridged by the requirement that the AFSC withhold these taxes as any other employer would be required to do under the Internal Revenue Code. The determination of this issue depends on how we view the process of bearing witness in the context of this case.

Quakers have for many hundreds of years taken the position that they could not engage in war or violence of any kind and could not take the life of another human being. In more recent years, this view has come to be known as the "peace testimony." The peace testimony is not a negative concept but is rather a positive idea requiring Quakers generally to strive to make war and violence unnecessary. Not all Quakers embrace the peace testimony as completely as others, and it is for each member of the faith to determine the parameters of his or her own peace testimony.

When the peace testimony of individual Quakers comes into conflict with a governmental requirement, the first step usually taken is to petition the government to change its position. Quakers worked out such a change and compromise with respect to alternative service during World War I and thereafter. If such a compromise cannot be worked out then the individual must re-examine his or her conscience to determine if it is possible to live with the government's requirement or if not, then to disobey the law so as not to violate conscience.

As applied to this case, plaintiffs Cleveland and Cadwallader argue that their consciences are being violated by their inability to refuse to pay a certain portion of their taxes for war related purposes even though they know that ultimately they will be required to pay the full amount they owe. However, they feel and argue that they have a responsibility to themselves which is religiously motivated to refuse to pay such taxes because it violates their beliefs— their peace testimony.

We are of the opinion that the withholding method of collection of taxes does foreclose plaintiffs' ability to freely exercise that part of their beliefs requiring them to refuse to participate in war in any form with respect to the payment of war taxes. The tax which is withheld is in fact a tax on their incomes which means that the support of whichever war we happen to be engaged in is coming out of their pockets. The "support of war" also includes the payment of taxes in time of "peace" so long as those taxes are used to support the military's defense budget generally. Quakers make no distinction between an offensive or a defensive war. Both are equally objectionable.

The final and most important question to be determined is whether or not the government's interest in the use of the withholding method of collecting taxes is so great and compelling as to outweigh the religious interests which the plaintiffs seek to protect. Over the years, the Supreme Court of the United States has placed a heavy burden on the government to establish which compelling state interests are at stake so that the balance may be struck between individual First Amendment rights and compelling legitimate state interests. See Sherbert v. Verner, 374 U.S. 398, 83 S. Ct. 1790, 10 L.Ed.2d 965 (1963). This burden must be met by a presentation of evidence upon which we can make certain findings of fact to support whatever balance is struck.

It appears obvious to us that the government has an interest in maintaining a uniform, efficient and orderly system of collecting federal income taxes in the United States. The withholding provi-

sions of the Internal Revenue Code would appear to be an integral part of the maintenance of this uniform and orderly system of collection. We will further take judicial notice of the fact that the great majority of federal income taxes are withheld at their source pursuant to the requirements of 26 U.S.C. § 3402. We must balance the possible disruption to this system of collection against the individual rights of these two plaintiffs to engage in the free exercise of their religion. Additionally, the government did show that the interest and penalty assessed against small amounts of tax deficiencies would not cover the cost to the Internal Revenue Service of collecting the tax through the levy process.

The plaintiffs on the other hand have shown that since 1970, the Internal Revenue Service has received by way of the levy process, every tax dollar to which it is entitled despite the fact that the AFSC has not withheld 51.6% of the federal income tax of plaintiffs Cleveland and Cadwallader required by the statute. At this point in time, we must acknowledge the fact that the government and the plaintiffs Cleveland and Cadwallader and AFSC have been quite successful in working out a difficult confrontation of ideology without causing any substantial dislocations or burdens to befall the government. The additional cost of collection in certain instances is the only specific additional burden placed on the government.

We further note that if plaintiffs Cleveland and Cadwallader were self-employed, they would not be in Court seeking the relief requested because they would not be subject to the withholding requirements of the Internal Revenue Code. The Internal Revenue Service would then be forced to deal with them as it must deal with any self-employed person who has refused to pay his or her income taxes. Consequently, we do not feel that we are creating a new problem for the Internal Revenue Service which will necessitate its having to devise a new procedure for collecting the tax to which it is entitled. As we noted above, the Service has been levying on plaintiffs' property since 1970 and has received all monies currently due it by that process.

■ We believe that the government has failed to establish that its interest in the use of the withholding method of collecting taxes is so great and compelling that it outweighs the religious interests which the plaintiffs seek to protect in this case. The additional cost of collection, if any, is a small price to pay when compared with the possible frustration of the religious practice of bearing witness to one's conscience which practice has sought the aegis of the First Amendment in the unique context of this case.

In Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), the Supreme Court held

" . . . that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation.' " 374 U.S. at 406, 83 S.Ct. at 1795.

The balancing of the interests apparent on each side is a difficult task in all but the clearest of cases. The *Sherbert* test set forth above and as applied to this case requires a showing by the government that a decision protecting the religious activity in question would be likely to result in placing a substantial burden on the ability of the Internal Revenue Service to collect the tax revenues to which it is entitled. We do not believe that the government has established the likelihood of such a burden based on the record before us, and we therefore hold that the withholding method of collecting the federal income taxes of plaintiffs Cleveland and Cadwallader violates their First Amendment rights to the free exercise of their religion.

We note that the fact that the plaintiff employees are working for a plaintiff employer which also shares their beliefs and is willing to accommodate them

in this situation is one factor which leads us to the result herein. The employer AFSC will be as much affected by this decision as the employees and its willingness to compute and not withhold the tax involved herein plus its history of complete candor in its dealings with the Internal Revenue Service insure that the government will get every tax dollar to which it is entitled.

Because we hold that the means of collecting plaintiffs' taxes by withholding them at the source restricts the free exercise of their religion by foreclosing a means by which they may bear witness to their opposition to the participation in war in any form which opposition is a fundamental part of their religious teaching as Quakers, the AFSC is likewise exempt from withholding 51.6% of the taxes of plaintiffs Cleveland and Cadwallader. Further, the AFSC is entitled to a refund of $574.09 which represents the sum of amounts not withheld from plaintiffs Cleveland and Cadwallader and several other employees not plaintiffs herein. AFSC is entitled to the refund because the government has at present received two times the amount of the tax to which they are entitled. It would be little comfort to the plaintiffs herein if we were to hold that the withholding requirements indeed abridge the free exercise of their religion without permitting the employer AFSC the right to a refund. Our holding today in no way affects the operation of 26 U.S.C. § 3403. We have not been asked to exempt the American Friends Service Committee from the operation of that statute and we will not do so. Also, we do not hold that the AFSC may cease to withhold taxes from other employees who are not plaintiffs herein. The AFSC may seek to exempt future employees by first seeking such exemption from the Internal Revenue Service and finally the Court, if necessary. This is not a class action, and we are powerless to extend the holding beyond the named plaintiffs who have actually participated in this suit.

Any statements of fact or law found in this Court's discussions regarding liability or damages which have not been specifically enumerated in the sections entitled "Findings of Fact" and "Conclusions of Law" respectively, are hereby designated "Supplemental Findings of Fact and Conclusions of Law."

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. § 1331(a) and § 1346(a)(1).

2. The plaintiffs Lorraine Cleveland and Leonard Cadwallader have standing to raise the constitutionality of the withholding provisions of the Internal Revenue Code as they apply to their particular situation.

3. The plaintiff AFSC has standing to sue for a refund under 28 U.S.C. § 1346(a)(1).

4. Section 26 U.S.C. § 7421(a) of the Internal Revenue Code is not a bar to this action.

5. Section 26 U.S.C. § 3402 is unconstitutional as applied to the facts of this case in that it operates as an abridgment to the free exercise of the religion of plaintiffs Lorraine Cleveland and Leonard Cadwallader.

6. The defendant United States of America will be enjoined from collecting 51.6% of the federal income taxes of plaintiffs Lorraine Cleveland and Leonard Cadwallader by requiring such taxes to be withheld at the source because such withholding violates the free exercise of their religion as members of the Society of Friends.

7. The defendant United States of America is liable for the refund of $574.09 which represent amounts not withheld from plaintiffs Cleveland and Cadwallader and certain other employees not plaintiffs to this action. Such amounts represent an overpayment of taxes not withheld under § 6414 of the Internal Revenue Code.