Susan **RICHARDSON** et al., Plaintiffs,

v.

The **CIVIL SERVICE COMMISSION OF the STATE OF NEW YORK** et al., Defendants.

No. 72 Civ. 1902 (CHT).

United States District Court,
S. D. New York.

March 22, 1978.

Jack Greenberg, Deborah M. Greenberg, Steven H. Bazerman, Community Law Offices, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendants; Judith A. Gordon, Asst. Atty. Gen., New York City, of counsel.

MEMORANDUM

TENNEY, District Judge.

This employment discrimination suit, commenced in 1972, was settled by agreement of the parties in 1975. Plaintiffs then petitioned pursuant to 42 U.S.C. § 2000e–5(k) for an award of reasonable attorney's fees incurred in advancing their claim. This Court granted that request, holding that plaintiffs were entitled to the benefits of the statute as prevailing parties because they had achieved through settlement the abolition of certain discriminatory employment practices and vindication of their personal claims. *Richardson v. Civil Service Comm'n*, 420 F.Supp. 64, 67 (S.D.N.Y.1976). The fixing of an appropriate award of attorney's fees was referred to United States Magistrate Leonard A. Bernikow, *id.* at 68, and by Report and Recommendation dated October 4, 1977 ("Magistrate's Report") the Magistrate endorsed an award totaling $30,810 for the services of those attorneys who had represented the plaintiffs.

Defendants have timely objected to the Magistrate's Report pursuant to 28 U.S.C. § 636(b). After making a "de novo determination of those portions of the report

. . . to which objection is made," *id.*, this Court finds the defendants' objections without merit and, for the reasons set forth, the award of attorney's fees as specified by Magistrate Bernikow is confirmed.

Counsel for plaintiffs consisted of Deborah M. Greenberg of the NAACP Legal Defense and Educational Fund, Inc.; Ronald Ellis of the same organization; Robert A. Engel, William C. Wittemore and K. Scott Muldoon of the Community Law Office ("CLO"), which is described as "essentially a joint venture by its staff and the private bar," Affidavit of David W. Wechsler, sworn to December 17, 1976, ¶ 4; and Steven H. Bazerman, one of the "more than 300 presently active volunteer attorneys from more than 50 participating law firms and corporate law departments" who, with staff attorneys, cooperate to deliver legal services through CLO. *Id.* ¶ 5. Magistrate Bernikow approved fees at the rate of $90 per hour for the time expended by staff attorney Greenberg and volunteer Bazerman, and at $60 per hour for the other named attorneys as junior associates of the two lead counsel. The Magistrate's computations of compensable time included, *inter alia*, hours spent preparing and litigating an unsuccessful motion for a temporary restraining order and preliminary injunction and hours spent litigating the right to attorney's fees. Defendants dispute the inclusion of these two categories of expended time, the recommended rate of compensation, and the inclusion of compensation to volunteer attorneys.

### Time Expended
#### The Unsuccessful Motion

It appears that defendants did not raise with the Magistrate the issue of compensability for hours spent at the commencement of the litigation in their unsuccessful request for a temporary restraining order and preliminary injunction. Instead, plaintiffs contend, and defendants do not deny, that a general compromise between the parties as to the total number of compensable hours was reached at a conference held between the parties during a hearing before the Magistrate. Plaintiffs' Response to Defendants' Objections 8. At the outset it should be noted that it is extremely late in the day for defendants to raise the issue of unsuccessful motion practice, especially where defendants do not deny that a virtual stipulation as to hours was presented to the Magistrate, where they make no argument that plaintiffs' initial procedural move was frivolous or made in bad faith, and where they cannot deny that plaintiffs ultimately prevailed. Furthermore, the statute invoked by plaintiffs provides for "reasonable" fees to prevailing litigants; it does not condition that mandate with the caveat that the grant to the party who won the war should be docked for every skirmish lost along the way.

Nor is there support for defendants' position in the case of *Perkins v. New Orleans Athletic Club*, 429 F.Supp. 661 (E.D.La. 1976), cited by them for the proposition that the mere designation of a party as "prevailing" does not imply that he was successful on all claims or that he should recover all requested attorney's fees. This is clearly the reasoning in *Perkins*, a case where plaintiff prevailed on only a minimal portion of the substantive claim asserted, yet recovered attorney's fees (in the face of defendants' vigorous objections) "so far as [the fees] were requisite to the issues on which plaintiff did prevail." *Id.* at 667. However, it is hard to see how *Perkins* can be read to imply that unsuccessful motion practice in the course of litigation is ipso facto "unreasonable," or is cause for automatic reduction in recoverable fees. In *Perkins* the court conditioned the award on the quantum of success in the end; it did not even speak to the means employed.

This Court finds more persuasive the argument advanced by plaintiffs and accepted by other courts that absent a showing of frivolity or bad faith a court engaged in measuring the fairness of fees sanctioned by the statute should not judge the strategic wisdom of every litigational tactic used or employ omniscient hindsight to expand or contract an award by a standard "requir[ing] attorneys (often working in new

or changing areas of the law) to divine the exact parameters of the courts' willingness to grant relief." *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D.Cal.1974), *aff'd*, 550 F.2d 464 (9th Cir. 1977), *cert. granted*, 434 U.S. 816, 98 S.Ct. 52, 54 L.Ed.2d 71 (1977); *see Locklin v. Day-Glo Color Corp.*, 429 F.2d 873, 879 (7th Cir. 1970). This is especially true where the parties who ultimately prevailed did not initially succeed in obtaining a preliminary equitable remedy, the imposition of which is an extraordinary measure charily awarded only in the exercise of the sound discretion of the court.

*Fees for Litigating to Recover Fees*

It is clearly accepted in this circuit that an award of attorney's fees under section 2000e–5(k) may include time expended by the attorney to prove entitlement to those fees. In *Torres v. Sachs*, 69 F.R.D. 343 (S.D.N.Y.), *aff'd*, 538 F.2d 10 (2d Cir. 1976), the district court specifically included compensation for time spent litigating this question, *id.* at 348; the court of appeals confirmed the district court award in all respects. The same proposition is firmly established in other circuits as well. *E. g.*, *Rosenfeld v. Southern Pacific Co.*, 519 F.2d 527 (9th Cir. 1975); *Hairston v. R & R Apartments*, 510 F.2d 1090, 1093 (7th Cir. 1975); *Knight v. Auciello*, 453 F.2d 852, 853 (1st Cir. 1972); *Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534, 539 (5th Cir. 1970).

In the face of this precedent, defendants urge that this Court adopt the reasoning recently applied by the United States Court of Appeals for the Second Circuit in *City of Detroit v. Grinnell*, 560 F.2d 1093 (2d Cir. 1977) ("*Grinnell II*"). In that antitrust case attorneys representing the prevailing class were not allowed compensation for time spent in connection with their fee application. The *Grinnell II* analysis is clearly inapplicable to civil rights actions. In an antitrust suit the award to counsel is deducted from the common fund recovered and to be shared by the successful plaintiffs under the equitable fund theory which permits "an attorney whose actions have conferred a benefit upon a given group or class

of litigants [to] file a claim for reasonable compensation for his efforts." *Id.* at 1098. The *Grinnell II* court reasoned that because no expansion of the fund would occur through the attorney's efforts to prove his just fee, those victorious plaintiffs who would ultimately share in the fund—minus attorney's fees—ought not to have the fund further diminished by legal activities which did not inure to their benefit.

No similar rationale is applicable to an award of attorney's fees in civil rights cases. Such fees are not deducted from a common fund to be shared by the prevailing parties; they are taxed against the losing parties in order to promote compliance with basic legislative policy: "If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." S.Rep.No.94–1011, 94th Cong., 2d Sess., *reprinted in* [1976] *U.S.Code Cong. & Admin.News* pp. 5908, 5910.

It is likewise the explicit intent of Congress that "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.' " *Id.* at 5913 (citation omitted). If defendants' position is accepted, then attorneys who are forced to litigate beyond the merits to assert a right to what is theirs by statute must expand such time "reasonably expended" without concomitant expansion of the fee. Given the ingenuity of counsel the Court can imagine a situation where the fees mandated for successful civil rights litigation would all but disappear in a postlitigation battle over the amount of the award. Such a prospect is an affront to the strong policy behind section 2000e–5(k) and similar legislation.

Accordingly, the Court affirms the Magistrate's inclusion in his computations of compensable time the attorney's fees incurred in preparing and litigating both the unsuccessful preliminary injunction and the issue of entitlement to attorney's fees.

*Fee Scale and Attorneys to be Compensated*

The main thrust of defendants' objection is to the award of fees at rates found by the Magistrate to be "reasonable and comparable to fees charged by other attorneys in the community." Magistrate's Report at 4. Defendants contend that because the attorneys involved in this litigation were employed by nonprofit public interest law firms or had volunteered their services *pro bono publico* the former group should be compensated only by reference to their salaries and the latter should receive no compensation at all. The same argument was advanced and completely dismissed by this circuit in *Torres v. Sachs, supra.* The *Torres* holding is absolutely dispositive of defendants' argument here, even though that argument be artfully phrased in terms of "windfall" fees to otherwise minimally compensated or voluntary counsel: "We agree with the courts which have held that the 'allowable fees and expenses may not be reduced because [the prevailing party's] attorney was employed . . . by a civil rights organization . . . or because the attorney does not exact a fee.'" *Torres v. Sachs, supra,* 538 F.2d at 13 (citation omitted). Furthermore, the rates approved by the Magistrate—$90 per hour for highly experienced counsel and $60 per hour for junior associates—are not excessively inflated over the very rates approved in *Torres* for counsel with somewhat less experience. *Torres v. Sachs, supra,* 69 F.R.D. at 346–47 ($75 per hour for lead counsel; $50 per hour for junior associates).

Finally, defendants cite *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.,* 517 F.2d 1141 (4th Cir. 1975), for the proposition that attorneys working *pro bono publico* may be compensated under a statute such as section 2000e–5(k) only if they have agreed to donate the fees thereby recovered to a public interest law firm. Not only does this argument fly in the face of legislative intent, it is not even the holding of *Tillman.* There the argument was made that because certain volunteer attorneys had declined personal compensation in favor of donating the fees earned to the ACLU Foundation and Fund, the award should be denied to those attorneys. The *Tillman* court rejected this argument out of hand and, relying on the rationale explicated in *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), stated:

> In *Piggie Park*, the Court did not consider allowed fees to be a form of punitive damages, or, strictly speaking, to be simply compensatory. The purpose of the award, the [*Piggie Park*] Court emphasized, was to encourage people to seek judicial redress of unlawful discrimination. . . . Consequently, when an allowance of attorneys' fees is justified, it should be measured by the reasonable value of the lawyer's services. It should not be diminished because the attorney has agreed to contribute the money, in whole or in part, to a civil rights organization whose aims have stimulated him to work voluntarily.

*Id.* at 1148 (emphasis added). It is surely standing *Tillman* on its head to cite it for the proposition that because an attorney does *not* offer to donate his section 2000e–5(k) fees he is barred from taking them, especially when the norm contemplated by the Congress was that private attorneys should be personally compensated for time expended in successful civil rights litigation.

For all of the foregoing reasons, the Court finds no merit in defendants' objections to the Report of Magistrate Bernikow, and the award of attorney's fees there recommended is hereby confirmed.

Settle judgment on notice.