**POPULATION SERVICES INTERNATIONAL et al., Plaintiffs,**

v.

**Hugh CAREY et al., Defendants.**

**No. 74 Civ. 1572.**

United States District Court,
S. D. New York.

Jan. 5, 1979.

Michael N. Pollet, Steven Delibert, Karpatkin, Pollet & Lemoult, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of N. Y. by Arlene R. Silverman, Asst. Atty. Gen., New York City, for defendants.

## OPINION AND ORDER

PIERCE, District Judge.

Attorneys for plaintiffs in the above-entitled action seek an order pursuant to 42 U.S.C. § 1988,[1] the Civil Rights Attorney's Fee Awards Act of 1976, declaring the defendants' liability for attorney's fees. In addition, they request the Court to fix the amount of such attorney's fees at $116,516.25 and the amount of costs and disbursements at $4,759.75, for a total of $121,276.00.

Plaintiffs originally brought this action challenging the constitutionality of a New York statute which prohibited distribution of contraceptives to persons over the age of 16 by anyone other than a licensed pharmacist, which prohibited distribution of contraceptives to anyone under the age of 16, and which banned all advertising and display of contraceptives. By opinion dated July 2, 1975, a three-judge court declared the statute unconstitutional. *Population Services International v. Wilson*, 398 F.Supp. 321 (S.D.N.Y.1975). The Supreme Court affirmed. *Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).

Plaintiffs' attorneys then brought this motion for attorney's fees. Consideration of the motion was stayed pending the Supreme Court's consideration of the constitutionality of 42 U.S.C. § 1988. On June 23, 1978, the Supreme Court rendered its decision in *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Plaintiffs' attorneys then moved to amend the present fee request to include an award of fees for the time spent in preparing the motion for attorney's fees, *i. e.,* $4,725 plus $64.46 in disbursements, thus making the total fee request $126,065.46.

*Discussion of Liability*

Defendants object to the award of attorney's fees on several grounds which were expressly rejected by the Supreme Court in *Hutto, supra.*

■ Defendants contend that "the award of fees would wrongfully enforce monetary penalties on defendants notwithstanding that the complaint fails to state a claim against them in their individual capacities." Defendants further argue that, on the other hand, attorney's fees may "not be assessed against the state since it was not, and could not have been, a party to this action." The Supreme Court stated that in enacting § 1988 "Congress recognized that suits brought against individual officers for injunctive relief are for all practical purposes suits against the State itself." *Id.* at 700, 98 S.Ct. at 2578. Here, as in *Hutto,* the state's Attorney General has defended the case even though neither the State nor any Department is expressly named as a defendant. The Court notes, as did the Supreme Court: "There is no indication in this case that the named defendants litigated in bad faith . . . . Consequently, the [State] is the entity intended by Congress to bear the burden of the counsel fees award." *Id.*

■ Defendants also claim that since § 1988 was enacted subsequent to the three-judge court's decision, the retroactive imposition of attorney's fees violates due process. The Supreme Court rejected this argument in *Hutto,* quoting the House Report: "In accordance with applicable decisions of the Supreme Court, the bill is intended to apply to all cases pending on the date of enactment." *Id.* at 695 n.23, 98 S.Ct. at 2576.

---

1. 42 U.S.C. § 1988 (1976) provides in pertinent part:

    "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

■ Defendants further contend that the maximum amount that plaintiffs' attorneys may recover is $18,500 plus disbursements, since that is the amount for which they contracted to prosecute the action. The Court is not persuaded by this argument and does not find that such a fee agreement represents a ceiling on the amount of attorney's fees to be awarded. See *Zarcone v. Perry*, 581 F.2d 1039, 1044 (2d Cir. 1978) ("the prospect of an award supplementing the fees that the successful plaintiff might be able to pay would be essential to attract competent counsel.")

■ In addition, defendants request the Court, in the exercise of its discretion, to decline to award attorney's fees. Defendants point to the lack of bad faith on their part in defending this action. However, an award of attorney's fees pursuant to 42 U.S.C. § 1988 is not predicated on any finding of bad faith. *Hutto v. Finney*, 437 U.S. 678, 696, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Nor does the fact that § 1988 was enacted while this case was before the Supreme Court preclude an award of attorney's fees. *Id.* at 696 n.25 & 26, 98 S.Ct. 2565. Defendants also emphasize that "Many states had laws similar to [this one] and this one lawsuit eliminated the need for many lawsuits around the country . . . by leading to a definitive ruling." It is precisely because of the importance of this case that attorney's fees should be awarded so that plaintiffs' attorneys should not be deterred from bringing such suits. The Senate Report on § 1988 stated: "All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."

S.Rep.No. 94–1011, 94th Cong., 2d Sess. 1, 2 (1976), U.S.Code Cong. & Admin.News, pp. 5908, 5910. The Court finds the present situation not much different from that in which the Supreme Court stated: "It follows that one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Accordingly, the Court weighs the benefits conferred by this suit against the hardship that would be imposed upon a grant of attorney's fees and concludes that it would represent an abuse of discretion not to award attorney's fees in this case. See *Zarcone v. Perry*, 581 F.2d 1039, 1044 (2d Cir. 1978).

*Motion to Amend*

■ Plaintiffs' attorneys have also moved to amend their fee request to include a request for an award of fees for the efforts expended in support of the application itself. "It is clearly accepted in this circuit that an award of attorney's fees under section 2000e–5(k) may include time expended by the attorney to prove entitlement to those fees." *Richardson v. Civil Service Commission*, 449 F.Supp. 10, 12 (S.D.N.Y.1978). In this context, the Court finds no reason to distinguish between an award of attorney's fees pursuant to § 2000e–5(k)[2] and an award pursuant to § 1988. The Court is mindful of the reasoning expressed in *Richardson* : "Given the ingenuity of counsel the Court can imagine a situation where the fees mandated for successful civil rights litigation would all but disappear in a post litigation battle over the amount of the award."[3] *Id.* at 12.

2. 42 U.S.C. § 2000e 5(k) (1976) provides:
"In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." The language of § 2000e–5(k) is almost identical to that of § 1988. See note 1 *supra*.

3. The Supreme Court has also noted that by choosing to contest fee applications in civil rights cases, defendants risk the further award of fees. See *Hutto v. Finney*, 437 U.S. 678, 697, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Different considerations, however, appear to govern the application of fees for fee motions in class action suits in which there is a class fund. See *Richardson v. Civil Service Commission*, 449 F.Supp. 10, 12 (S.D.N.Y.1978) (Attorney's fee

Such a possibility was also recognized by the Supreme Court in *Hutto* in its affirmance of the Court of Appeals' grant of additional attorney's fees for the appeal of the district court's grant of fees. See *Hutto v. Finney*, 437 U.S. 678, 696, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Accordingly, the Court grants the motion to amend the fee request.

## Disbursements

■ Defendants also object to the amount of the attorney's fees and the type of disbursements sought. Defendants contend that the Court may not assess any disbursements other than those specifically authorized by statute as taxable costs. The allegedly excludable items include: printing costs in the Supreme Court, transportation, meals, lodging, messenger's fees, long distance phone calls and overtime stenography. Defendants have cited no case law supporting their position. On the other hand, plaintiffs' attorneys have cited numerous cases in which such allegedly excludable costs "not subsumed under federal statutory provisions normally granting such costs against the adverse party . . . are to be included in the concept of attorneys' fees." *Fairley v. Patterson*, 493 F.2d 598, 606 n.11 (5th Cir. 1974); see *Rios v. Enterprise Association Steamfitters Local 688 of U.A.*, 400 F.Supp. 993, 997 (S.D.N.Y. 1975), *aff'd on attorney's fees and rev'd on other grounds*, 542 F.2d 579 (2d Cir. 1976), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977) (development of statisti-

cal analyses); *Barth v. Bayou Candy Co.*, 379 F.Supp. 1201, 1205 (E.D.La.1974) (photographer's fees, postcards, newspaper advertisement, long distance phone call, and photocopying); *James v. Beaufort County Board of Education*, 348 F.Supp. 711, 720 (E.D.N.C.1971), *aff'd*, 472 F.2d 177 (4th Cir. 1972) (mileage, motel and meal costs). Furthermore, during the House debate on § 1988, a member of the Committee on the Judiciary stated that "the phrase 'attorney's fee' would include the values of the legal services provided by counsel, including all necessary expenses incurred in furnishing effective and competent representation." 122 Cong.Rec. H12,160 (daily ed. Oct. 1, 1976). Accordingly, the Court finds that such disbursements [4] may be awarded to plaintiffs' attorneys.

■ It appears that defendants challenge only the amounts for photocopying, reproduction services and miscellaneous matters. The Court does not find the amount of $874.91 stated for photocopying and reproduction services to be excessive, but does sustain defendants' objection to the miscellaneous costs of $73.73 as being totally unexplained. Thus, the total amount of disbursements the Court will award is $4,824.21 minus $73.73 or $4,750.48.

## Base Fees

Defendants further claim that the hourly rates and the number of hours worked are excessive and, therefore, they request an evidentiary hearing. The standards to be

---

analysis in antitrust cases "clearly inapplicable to civil rights actions."). In such cases, attorney's fees for fee motions frequently have been denied because they do not benefit the fund (*Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 111 (3d Cir. 1976)), and because "any class member objecting to an initial award would risk increasing the total attorney's fee—and thereby decreasing the class's fund—even though successful in pressing the objection" (*City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1102 (2d Cir. 1977)).

4. The list of disbursements follows:

| Item | Amount |
|---|---|
| Filing fee, U.S. District Court | $ 15.00 |
| U.S. Marshal, service of summons and complaint | 16.96 |
| Printing motion to affirm and appellees' brief, U.S. Supreme Court | 2,948.76 |
| Photocopying and reproduction services | 874.91 |
| Transportation, meals, lodging, etc. | 646.09 |
| Messengers | 53.35 |
| Long Distance Telephone | 76.45 |
| Overtime Stenography | 54.50 |
| Miscellaneous | 73.73 |
| Fee motion—photocopying and postage | 64.46 |
| TOTAL | $4,824.21 |

used in this Circuit[5] for civil rights attorney's fees appear to be the same as those used in determining attorney's fees in other complex federal litigation, such as securities actions. See *Beazer v. New York City Transit Authority*, 558 F.2d 97, 100 (2d Cir. 1977) *cert. granted,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1978); *Torres v. Sachs*, 538 F.2d 10, 12–13 (2d Cir. 1976). In such cases, the Court begins its inquiry by first obtaining the "lodestar," the basic value of the attorneys' services. See *Lindy Brothers Builders, Inc. v. American Radia-* *tor & Standard Sanitary Corp.*, 540 F.2d 102, 108 (3d Cir. 1976) *("Lindy II"); accord, City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974) *("Grinnell I").* The "lodestar" amount is obtained by multiplying the number of hours expended by each attorney involved in each type of work by the hourly rate normally charged for similar work.

. Appended to the affidavits of Michael N. Pollet, Esq., are the following lists of charges:

| Name | Hours | Billing Rate per Hour | Total |
|---|---|---|---|
| Marvin N. Karpatkin | 40 | $120 | $ 4,800.00 |
| Michael N. Pollet | 325¼ | 85 | 27,646.25 |
| John E. LeMoult | 23¼ | 75 | 1,743.75 |
| Steven Delibert | 130¾ | 60 | 7,845.00 |
| | 519¼ | | $42,035.00 |
| on fee motion: | | | |
| Michael N. Pollet | 9 | 85 | 765.00 |
| Steven Delibert | 66 | 60 | 3,960.00 |
| Combined total | 594¼ | | $46,760.00 |

The nature of the work engaged in by plaintiffs' counsel is summarized as follows:

a. Preparation and filing of the complaint.

b. Motion for a three-judge court; reply to cross-motion to dismiss the complaint; preparation and filing of supplemental complaint alleging new developments; oral argument.

c. Oral argument before three-judge court; summary judgment motion papers including memorandum of law.

d. Preparation and filing of papers in opposition to defendants' motions for stay pending appeal to the Supreme Court.

e. Preparation and filing of motion to affirm in Supreme Court.

f. Preparation of briefs and oral argument before Supreme Court.

Although defendants request an evidentiary hearing, the Court does not consider such a hearing to be a matter of right.[6] Other than the mere assertion in

5. The Court notes the D.C. Circuit Court opinion of *Copeland v. Marshall*, 193 U.S.App.D.C. 219, 594 F.2d 244 (D.C.Cir.1978) and the procedures set forth therein for determining attorney's fees in Title VII class actions. While the Court recognizes the concerns expressed in *Copeland*, the Court finds that the governmental fisc can adequately be protected by applying the standards presently in use in this Circuit. See *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

6. S.D.N.Y. Civil Rule 11B which mandates an evidentiary hearing on attorney's fee applications in class action and stockholder derivative suits does not appear to be applicable since this

suit was neither a class action nor derivative suit. Similarly, the obligation to hold an evidentiary hearing in class action cases is premised in part on the need for judicial protection of the class fund from which attorney's fees are awarded. See *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 472 (2d Cir. 1974) *("Grinnell I"); Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 169 (3d Cir. 1973) *("Lindy I").* Furthermore, in *Grinnell I*, defendants' request to present evidence at a hearing was denied whereas in the present case there has been no offer of proof by defendants.

their brief that the rates and hours denominated are excessive, defendants have not supported such assertion with any affidavits, case law or other offer of proof which would put such matters into issue. Conversely, plaintiffs have supported their application with a detailed affidavit of Michael Pollet setting forth the qualifications and experience of each attorney for whom compensation is sought and a list of other civil rights and civil liberties cases handled by these attorneys; an affidavit of an attorney unrelated to the litigation who attests to the reasonableness of the hours and rates set forth and to the reputation of the attorneys; and a brief setting forth examples of reasonable rates in recent case law. Accordingly, the Court denies defendants' request for an evidentiary hearing.

■ The Court does not find that the number of hours expended or the normal billing rates sought exceed that which is reasonable for the type of case involved herein. The rates to be used are those which are "reasonable and comparable to fees charged by other attorneys in the community." *Richardson v. Civil Service Commission,* 449 F.Supp. 10, 13 (S.D.N.Y.1978). The Court finds the rates charged herein which range from $75 to $120 for partners and $60 for a fourth-year associate (in 1975) to be well within the range of rates typically awarded by this Court. See *Shapiro v. Consolidated Edison Co.,* [Current] CCH Fed.Sec.L.Rep. ¶ 196,364, at 93,251 (S.D.N.Y.1978) ($100 to $200 for partners' time; $50 for associates' time); *Barnett v. Pritzker,* 73 F.R.D. 430, 434–38 (S.D.N.Y.1977) ($100 to $125 for partners' time; $50 to $75

for associates' time); *Frankenstein v. McCrory,* 425 F.Supp. 762, 766–67 (S.D.N.Y. 1977) ($125 to $140 for partners' time; $75 to $85 for associates' time); *City of Detroit v. Grinnell Corp.,* CCH 1976–1 Trade Cases ¶ 60,913, at 68,982 (S.D.N.Y.1976), *aff'd on "reasonable hourly rate" but rev'd on other grounds,* 560 F.2d 1093 (2d Cir. 1977) ($100 to $125 for partners' time; $45 to $85 for associates' time); *Quirke v. Chessie Corp.,* 368 F.Supp. 558, 563 (S.D.N.Y.1974) ($150 per hour for plaintiff's attorney, apparently a single practitioner). The rates requested by plaintiffs' attorneys also appear reasonable in light of the considerable experience of these attorneys in civil rights cases. See, e. g., *Holt v. Commonwealth of Virginia,* 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965); *Olzman v. Lake Hills Swim Club,* 495 F.2d 1333 (2d Cir. 1974); *American Friends Service Committee v. United States,* 368 F.Supp. 1176 (E.D.Pa.1973), *rev'd,* 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974).[7]

The Court also finds the experience of the attorneys to have been a factor in the efficient and expeditious handling of this action. Further, none of the issues in the cases cited by the attorneys as part of their experience duplicated the issues in this case. Although the attorneys were experienced in civil rights litigation this case still presented novel and complex questions for which there were no direct precedents. The Court is not persuaded by defendants' contention that "[o]nce the memoranda for the District Court were completed, Mr. Pollet's job became essentially one of revising and editing [because] the theories propounded by the

The Court is aware of the Supreme Court's admonition that "the amount of the award for [attorneys'] services should, as a *general rule,* be fixed in the first instance by the District Court, after hearing evidence as to the extent and nature of the services rendered." *Perkins v. Standard Oil Co.,* 399 U.S. 222, 223, 90 S.Ct. 1989, 1990, 26 L.Ed.2d 534 (1970) (emphasis supplied). The Court finds this case to be an exception to the rule and is not persuaded that an evidentiary hearing is required when factual issues have not been placed clearly in dispute.

7. Plaintiffs' counsel has also set forth the following cited cases in which they were involved:

*United States v. Weller,* 401 U.S. 254, 91 S.Ct. 602, 28 L.Ed.2d 26 (1971); *Noyd v. Bond,* 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969); *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *Lucido v. Cravath, Swaine & Moore,* 425 F.Supp. 123 (S.D.N.Y. 1977); *Consumers Union of United States v. Veterans Administration,* 301 F.Supp. 796 (S.D. N.Y.1969), *app. dismissed,* 436 F.2d 1363 (2d Cir. 1971); *Murray v. Vaughan,* 300 F.Supp. 688 (D.R.I.1969); *Doe v. Roe,* 34 N.Y.2d 562, 354 N.Y.S.2d 941, 310 N.E.2d 539 (1974), *cert. dismissed,* 420 U.S. 307, 95 S.Ct. 1154, 43 L.Ed.2d 213 (1975).

plaintiffs in this action in support of their position never changed from beginning to end." For example, the motions to stay involved new research and writing. Further, the Court does not find that 93½ hours of a partner's time and 86½ hours of an associate's time for research and preparation of all the necessary papers in the Supreme Court is excessive, even if the legal arguments were similar to those propounded in the lower court briefs. Cf. *City of Detroit v. Grinnell Corp.,* CCH 1976–1 Trade Cases ¶ 60,913, at 68,982 (S.D.N.Y. 1976), *aff'd in part and rev'd on other grounds,* 560 F.2d 1093 (2d Cir. 1977) (time expended for briefs and legal research totaled 502.5 hours; apparently only one motion—class action certification motion).[8]

Thus, the Court concludes that the amount of time expended was also reasonable, and the Court finds the amount sought as the lodestar figure, $46,760, to be just compensation.

*Incentive Award*

■ Additionally, the attorneys seek $74,481.25 as an incentive or premium figure. In awarding fees in excess of the lodestar rate, the Court generally considers such factors as the complexity of the issues, the risks of litigation and the skill of the attorneys in determining the final fee amount. See *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1098 (2d Cir. 1977).

Defendants have conceded the importance of this case. Complex issues of standing, the constitutional rights of minors, the first amendment interests in advertising, and rights of privacy were presented. See 63 A.B.A.J. 1126, 1131 (1977); 77 Colum.L. Rev. 1216 (1977); 91 Harv.L.Rev. 146 (1977). The complexity of the case and novelty of the issues presented are reflected in the fact that the Supreme Court justices filed five separate opinions. See *Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (Justice Brennan wrote the opinion of the Court of which one part was not joined in by a majority of the justices; Justices Stevens, White and Powell wrote concurring opinions; Justice Rehnquist wrote a dissenting opinion). Although the case essentially involved legal issues, as opposed to factual ones, the research and preparation were comparable to the preparation of a case for trial. From the inception of this case until and including the present motion for fees, plaintiffs' counsel have demonstrated a high degree of skill and comprehensive research in their papers. The extent of these attorneys' research was also noted by the Supreme Court. See *id.,* 431 U.S. at 695, 97 S.Ct. 2010.

By agreeing to prosecute this action and by displaying skill and professionalism, these attorneys were responsible in some measure for a decision which was socially beneficial to a large segment of the nation's citizenry. The Court reiterates its comment that "there is substantial evidence that harm may result from enforcement of particular legislation and that positive benefits may result from reversing that policy." *Population Services International v. Wilson,* 398 F.Supp. 321, 333 (S.D.N.Y.1975). See also *Carey v. Population Services International,* 431 U.S. 678, 696, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).

Plaintiffs' attorneys also request the Court to take into consideration their use of a law student whose time was not recorded and whose compensation is not sought as an item of expenses. Plaintiffs assert that their use of a law student enabled them to handle the case with less expenditure of attorneys' time and that the Court should take this factor into consideration in determining an appropriate incentive award. The Court does not find, as the defendants assert, that the use of a law student to perform some of the research and writing is an admission that said law student performed "a great deal" of the research in this case. As mentioned previously, the Court considers the action to have proceeded expeditiously and relatively efficiently

8. A description of the work involved in the *Grinnell* case is contained in *City of Detroit v. Grinnell Corp.,* 356 F.Supp. 1380 (S.D.N.Y. 1972), *rev'd,* 495 F.2d 448 (2d Cir. 1974) (*"Grinnell I"*).

on plaintiffs' part and notes this consideration as one factor in the Court's determination of an incentive award.

However, while the final fee award should reflect the factors of skill and complexity, the Court also notes that the skill of the attorneys is in part already reflected in the billing rates and that the complexity of the case was considered in determining the number of hours expended. Care should therefore be taken to avoid duplicative payment. *Shapiro v. Consolidated Edison Co.*, [Current] CCH Fed.Sec.L.Rep. ¶ 96,364, at 93,252 (S.D.N.Y.1978).[9]

Furthermore, the Court is mindful of a recent decision cautioning against large fee awards against government entities. See *Copeland v. Marshall*, 193 U.S.App.D.C. 219, 594 F.2d 244 (D.C.Cir.1978).[10] Also applicable is the admonition that attorney's fee requests be scrutinized with " 'an eye to moderation,' seeking to avoid either the reality or the appearance of awarding 'windfall fees.' " *Beazer v. New York City Transit Authority*, 558 F.2d 97, 101 (2d Cir. 1977), *cert. granted on other issues*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1978) (lodestar of $310,000 approved but incentive award disapproved).

Balancing all of the aforementioned factors, the Court hereby approves a final fee award of $70,000 ($46,760 plus incentive award of $23,240) plus disbursements in the amount of $4,750.48.

Plaintiff's attorneys to submit order on notice.

SO ORDERED.

---

**9.** In *Blank v. Talley Industries, Inc.*, 390 F.Supp. 1, the Court applied "average rates to all types of services" and awarded $100 per hour for partners' time and $50 per hour for associates' time "without consideration of other elements." *Id.* at 5. However, an additional 50% was added as an incentive award. Further, the Court approved 7,694 hours of partners' time and 3,578 hours of associates' time.

By contrast, in *Quirke v. Chessie Corp.*, 368 F.Supp. 588 (S.D.N.Y.1974), the Court awarded a basic fee of $150 per hour and also an additional incentive award of approximately 50%.

**10.** See note 5 *supra*.